OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court by the petition of Kathleen Blatter Knospe, former wife of Emil E. Knospe and the executrix and sole beneficiary under his will, for probate *46 of that will. Objections to probate were filed by Warren Knospe and Brian Knospe, adult children of the decedent. Arguing that the will’s material provisions were revoked by the parties’ divorce, the respondents sought a determination that the estate would pass by intestacy and requested the appointment of Warren Knospe as personal representative. The respondents subsequently moved for summary judgment, on the grounds that the facts were indisputable and uncontroverted. The guardian ad litem appointed to represent the decedent’s two infant children also objected to probate. After hearing oral argument and receiving the written submissions of the parties, this court reserved decision.
Emil E. Knospe died on July 23, 1994, leaving a will dated January 21, 1982. The will bequeaths the decedent’s entire estate to petitioner Kathleen Blatter Knospe (referred to in the will as Kathleen M. Blatter) and nominates her executrix. There are no contingent beneficiaries and no successor fiduciaries named. At the time he executed the will, the decedent had two children by his first wife, respondents herein. He was not yet married to the petitioner. The will gives no indication that the bequest of the entire estate was made in contemplation of the parties’ marriage. Nine months after signing the will, on October 16, 1982, the decedent married the petitioner. Two children were born of this union, the infants represented by the guardian ad litem. On April 14, 1994, petitioner obtained a judgment of divorce from the decedent, which incorporated an oral stipulation resolving all issues of maintenance, custody, visitation, and child support. Pursuant to the stipulation, petitioner was to receive maintenance for a specified period and a distributive award representing her interest in the marital property, including their residence. The stipulation did not include a waiver and contained no reference to inheritance rights of the parties. The decedent did not change his will prior to his death, which occurred suddenly, some three months after the divorce.
This is a case of first impression in New York. It involves the determination of whether a will’s execution before the parties’ marriage insulates any provisions in favor of the divorced spouse from the revocatory effect of EPTL 5-1.4. The statute provides, in pertinent part, for the revocation of both a testamentary gift to a divorced spouse and the nomination of that former spouse as fiduciary:
"(a) If, after executing a will, the testator is divorced, his marriage is annulled or its nullity declared or such marriage *47 is dissolved on the ground of absence, the divorce, annulment, declaration of nullity or dissolution revokes any disposition or appointment of property made by the will to the former spouse and any provision therein naming the former spouse as executor or trustee, unless the will expressly provides otherwise, and the provisions, dispositions and appointments made in such will shall take effect as if such former spouse had died immediately before such testator.
"If a provision, disposition or appointment is revoked solely by this section, it shall be revived by testator’s remarriage to the former spouse.”
Petitioner concedes that EPTL 5-1.4 revokes by operation of law any testamentary provision for a divorced spouse made during the parties’ marriage, but argues that the statute is inapplicable to the case before us because the will in question was executed before marriage, while the petitioner and decedent were friends. She points out that during their almost two-year matrimonial action, not only did the decedent not change his will, but he even named the petitioner as trustee of the proceeds of a life insurance policy for the benefit of his minor sons and the contingent beneficiary on that policy. The petitioner finds these facts evidence of an unaltered intent to benefit her despite the termination of their marriage.
Respondents claim that EPTL 5-1.4, by its literal terms, revokes the testamentary provisions leaving the decedent’s entire estate to petitioner and naming her executrix. They point out that, according to the statute, only an explicit direction in the will that the bequest is meant to survive the divorce will negate the revocation. Respondents argue that because the statute creates a conclusive presumption, unrebuttable by contrary evidence, the court should not consider petitioner’s extrinsic evidence of the decedent’s intent. In the alternative, however, they call to the court’s attention the bitter, adversarial nature of the parties’ divorce proceedings and the decedent’s vow to fight any required payments to petitioner, which, they say, render inconceivable the notion that he would have wished to continue to benefit her under his will.
The guardian ad litem’s written submissions note that under the literal language of EPTL 5-1.4, a divorce after the execution of a will is all that is required to effect a revocation of provisions in favor of a former spouse. She seeks a determination that, should the court rule the spousal provisions of the *48 will ineffective, with intestacy the result, the estate will be shared equally by the decedent’s four surviving children, who include her infant wards. She further requests that if the court appoints one of the respondents to administer the estate, he be required to post a bond.
We must interpret EPTL 5-1.4, then, in light of a novel set of facts: the testator’s execution of a will conferring substantial benefit on his spouse before his marriage to her. No New York court has heretofore been asked to determine whether EPTL 5-1.4’s operation presupposes a marital relationship at the time of the will’s execution or, put another way, whether the sequence of the marriage and the will execution are at all significant in determining the statute’s applicability. We believe, however, that though the question before us may be new to this jurisdiction, the answer, based on the language of the statute itself, its legislative history, and the decisions of sister States in analogous cases, is quite clear.
We look first at the language of EPTL 5-1.4 itself, which we find to be plain and unambiguous. It states very emphatically that if, after executing a will, the testator is divorced, the divorce revokes any testamentary disposition to the former spouse or any provision naming her as executor. The statute’s scope is undeniably categorical: it applies to all situations in which a divorce follows the execution of a will. And its effect is automatic: it revokes any testamentary disposition to, or fiduciary nomination of, a person from whom the testator is subsequently divorced. Moreover, EPTL 5-1.4 sets forth only two means by which its operation can be avoided: an express provision in the will that the disposition or appointment is valid despite the divorce and a revival of the disposition or appointment by remarriage to the former spouse-beneficiary.
By its own terms, then, the statute’s effect is not limited to the revocation of provisions in favor of a spouse under a will executed during marriage. The operative sequence of events is the execution of a will followed by the divorce from the spouse-beneficiary or spouse-fiduciary. Whether that spouse had the status of "friend” rather than wife (as is the situation in the case before us) at the time of the will’s execution is irrelevant. What is significant is that, as of the date the will speaks (the testator’s death), she is a former spouse (by virtue, in our case, first of her marriage to, and then divorce from, the decedent). Petitioner thus is on the same footing (former spouse-beneficiary-executor) as all others affected by the statute. Neither of the two exceptions set forth in EPTL 5-1.4 *49 applies in the instant case. It is uncontested that the decedent never took the requisite affirmative action to declare expressly in a new testamentary instrument that he wanted petitioner to receive his estate despite the termination of their marriage or to revive the original bequest by remarriage to her.
The legislative history of EPTL 5-1.4, we think, supports the conclusion that the sequence of marriage and will execution is not relevant to a determination of the statute’s applicability. Prior to the enactment of EPTL 5-1.4, New York law provided that a will could only be revoked by various physical acts, such as tearing, burning, or obliterating. Our courts consistently held that the means enumerated in the statute were exclusive and thus that the doctrine of implied revocation of a testamentary instrument was not triggered by the change of circumstances occasioned by divorce. As the Queen’s County Surrogate’s Court held in Matter of Sussdorff 182 Misc 69, 70-71 [1943]), "The divorce obtained by the legatee does not, expressly or impliedly, revoke, alter or destroy the testamentary provision made for her in testator’s will,” since an effective revocation can only be made pursuant to the statute, which "neither mentions divorce nor provides that it shall have any effect on the will of a spouse previously executed.”
As part of its sweeping revision of New York estates law, the Bennett Commission recommended a radical change in the law concerning the effect of divorce on a testamentary provision for a spouse. The Commission believed that the case law holding physical means of revocation exclusive did not accurately reflect the intent of the average testator: "it would seem strongly presumable, at least in the case of divorce or annulment, that a testator would no longer wish testamentary benefits conferred upon a former spouse prior to the divorce or annulment to remain effective thereafter.” (5th Report of Temp St Commn on Estates, 1966 NY Legis Doc No. 19, at 782.)
Noting "the concededly lax tendencies of the public with respect to the making or reviewing of Wills,” the Committee advocated a parens patriae approach; the State should protect its citizens from the consequences of their own inaction: "On balance, it would seem preferable policy to create a conclusive statutory presumption that provisions in a will for a former spouse are deemed revoked by divorce or annulment. In such case, should the testator wish to retain the provisions in his will for a former spouse, he would be required to take the affirmative step of republishing his will, or executing a new *50 one to evidence that intention.” (5th Report of Temp St Commn on Estates, op. cit., at 782.)
We note that neither the Bennett Commission Report, nor the commentaries* thereon that we have also reviewed, makes any reference to the issue petitioner raises: whether a testamentary gift made while the parties were bound by ties of friendship, rather than of marriage, should be subject to the presumption of revocation if those friends subsequently marry and then divorce. Clearly, the Commission did not believe that such a factual variation rose to the level of an exception to the statute’s sweep. Nor do we. The Bennett Commission concluded, and the Legislature accepted, in enacting its recommendation, that divorce constitutes such a drastic alteration in not only the legal, but also the social and emotional, relationship of a couple as to warrant an equivalent and, automatic, alteration in a testamentary plan based on that relationship. In the majority of cases, we feel that it is reasonable to presume that the feelings of anger, betrayal, and mistrust that both give rise to, and result from, a divorce action, will be fatal, not only to the strong emotional bonds that have developed during the marriage, but also to the friendship on which the marriage may have been grounded. It is the divorce that is destructive of the testamentary gift, whether that gift preceded or succeeded the establishment of the marital relationship. In those rare instances in which the parties remain good and close friends, the statute affords the opportunity, by the affirmative action of specifically so stating in a new will, to continue the testamentary benefits.
EPTL 5-1.4 was designed to prevent needless litigation and obviate the necessity for the very type of analysis petitioner asks this court to make. It does so by creating a conclusive presumption, which by its nature is irrebuttable (see, Matter of Hollister, 18 NY2d 281, 288 [1966]; Matter of Lampshire, 57 Misc 2d 332, 333 [Sur Ct, Erie County 1968]). Accordingly, we will not consider either the extrinsic evidence of the decedent’s intent proffered by petitioner, or the contrary facts put forth by respondents, because they are irrelevant to a determination under the statute.
Although New York courts have hitherto not confronted *51 this issue, tribunals in other States have interpreted statutes, like ours, patterned on section 2-508 of the Uniform Probate Code (8 ULA 122 [Master ed]), in light of circumstances involving testamentary bequests to a former spouse made before the parties married. In almost every case, their decisions support our conclusion that the sequence of the will’s execution and the marriage bears no significance. We find the California appellate court’s analysis in Estate of Reeves (284 Cal Rptr 650, 233 Cal App 3d 651 [1991]) particularly useful. After discussing analogous cases in other jurisdictions, and reviewing the California statute’s language and legislative history, the Reeves court affirmed the lower court’s denial of probate to a will leaving the decedent’s entire estate (with no contingent beneficiary) to his former spouse, who was his girlfriend at the time he signed the will. The court determined that it was not error to strike testimony concerning the decedent’s intent to benefit his former spouse, since the statute automatically revoked all testamentary provision for her. Indeed, the court noted that the California statutory scheme provided the decedent ample opportunity to assure any continuation of benefits to his former spouse. The judgment of divorce contained a warning that the divorce could automatically alter the testamentary plan, and the revocation statute itself specified that its effect could be counteracted by executing a new will. The decedent, however, did not avail himself of this opportunity (Estate of Reeves, supra, 284 Cal Rptr, at 655, 233 Cal App 3d, at 659).
The Reeves court found the legislative purpose of the statute to be protective of the deceased testator, not of the former spouse-beneficiary, and concluded that the exact timing of marriage and will execution was unimportant: "The Legislature changed the law to protect a spouse who neglects to change his or her will following divorce or annulment. This purpose is no less compelling where, as here, the decedent executes his will before he and his former spouse are married. The significant fact is the couple was married and subsequently divorced. It is this change in legal status which triggers the protections of section 6122.” (Estate of Reeves, supra, 284 Cal Rptr, at 654, 233 Cal App 3d, at 658, citing Matter of Will of Reilly, 201 NJ Super 306, 312, 493 A2d 32, 35 [1985].)
The Supreme Court of Missouri relied on the plain language of a statute also derived from Uniform Probate Code § 2-508 to uphold the revocation of a disposition to a former spouse made *52 prior to marriage. The statute, by its own terms, the court said, revokes such testamentary provisions, and its operation is in no way limited to bequests made after marriage. The fact that the beneficiary was not the testator’s spouse when the will was executed did not alter, to the court’s mind, the facts that the provisions were in her favor and that she was divorced from the decedent at his death (Matter of Bloomer, 620 SW2d 365, 366-367 [Mo 1981]). Similarly, a New Jersey appellate court affirmed the trial court’s decision denying probate to a will which left the decedent’s entire estate to his fiancée, whom he subsequently married. That marriage was annulled several years later. The court explained that the operative New Jersey law "focuses on the termination of the marriage and not on the status of a spouse at the time the will was made, with the result that the sequence of the will and the marriage is irrelevant” (Matter of Will of Reilly, 201 NJ Super 306, 312, 493 A2d, at 35 [1985], supra). Courts in most other jurisdictions that have confronted this issue have reached the same conclusion. (See, for instance, Duke v Wynne, 549 NE2d 1096 [Ind App 1990]; Davis v Aringe, 292 Ark 549, 731 SW2d 210 [Sup Ct 1987]; Russell v Johnston, 327 NW2d 226 [Sup Ct, Iowa 1982].)
There are, however, at least two cases with contrary holdings on which petitioner relies. In Codner v Caldwell (156 Ohio St 197, 101 NE2d 901 [1951]), the Supreme Court of Ohio held that a divorce and property settlement did not constitute the kind of changed circumstances from which revocation of a testamentary disposition could be implied. This case is immediately distinguishable from the case before us, however, and not relevant to our determination. Though the will in Codner was executed before marriage, the statute in question involved implied revocation rather than revocation by operation of law (i.e., revocation by divorce). The Ohio court was accordingly compelled to undertake the very kind of analysis the New York statute quite emphatically precludes.
Estate of Carroll (749 P2d 571 [Okla Ct App 1987]) did involve a revocation by operation of law statute patterned on the Uniform Probate Code. The Oklahoma court held that the statute pertained only to wills made during a marriage providing for contemporary spousal inheritance and upheld the bequest to the divorced spouse, to whom the testator was not married when he executed the will. The court spent no time reviewing either the Oklahoma law’s legislative history or analogous cases from other jurisdictions. It based its holding on its own interpretation of the statute. Insofar as it involved *53 the effect of divorce on a person’s will, the law, in the court’s view, involved a status-based subject which assumed a marital relationship. Because the parties were not married when the will was signed, the court felt that the statute did not apply, and it refused to negate the will’s intent to benefit the decedent’s friend, later his former spouse. We find the court’s analysis of the issues conclusory, however, and agree with the Reeves court that Carroll is unpersuasive and poorly reasoned (Estate of Reeves, supra, 284 Cal Rptr, at 654, 233 Cal App 3d, at 658).
The so-called revocation by divorce statutes, then, as cases interpreting them make clear, are characterized by automatic effect and sweeping scope. EPTL 5-1.4, like the laws of other jurisdictions patterned on Uniform Probate Code § 2-508, carves out no exception for wills executed before marriage. The operative sequence is, rather, that of the execution of the will followed by dissolution of the marriage. All dispositions to, or appointments of, a spouse from whom a testator is divorced before his death are revoked, unless the will provides specific direction to the contrary.
Accordingly, we find that the provisions of Emil Knospe’s will dated January 2, 1982 bequeathing his entire estate to Kathleen Blatter Knospe and nominating her as executrix are revoked pursuant to EPTL 5-1.4. We grant respondents’ motion for summary judgment, insofar as we determine that the facts (excluding both parties’ allegations concerning the decedent’s intent, which are irrelevant) are uncontested and that as a matter of law EPTL 5-1.4 operates to revoke the disposition and fiduciary appointment in question. Respondents have sought, alternatively, that the will be denied probate or that it be admitted with a construction that the estate passes by intestacy. We note that no one has claimed that the will was not validly executed, that the decedent lacked testamentary capacity, or that he was unduly influenced. Pursuant to SCPA 1408, the will must therefore be admitted to probate (see also, Matter of Davis, 182 NY 468, 474-475 [1905]). EPTL 5-1.4 provides that the dispositions in the will shall take effect as if the former spouse had died immediately before the testator. Because the decedent failed to provide for a contingent beneficiary or substitute executor, his estate will pass by intestacy to his four children. Letters of administration c. t. a. will issue to respondent Warren Knospe, upon his posting of a bond in an amount satisfactory to the court.

 See, for instance, Hoffman, Revocation of Wills and Related Subjects, 32 Brook L Rev 1 (1965) (the second of two articles comprising the author’s report for the Bennett Commission) and Arenson, An Analysis of Certain Provisions of the Estates, Powers and Trusts Law, 33 Brook L Rev 425 (1967).