January 22, 1999

No. 3--98--0454

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

In re ESTATE OF DONALD ) Appeal from the Circuit Court

CHARLES FORREST            ) for the 12th Judicial Circuit (Estate of Donald Charles )    Will County, Illinois

 Forrest, Decedent, ) 

Petitioner-Appellee, ) 

) No. 96--PE--8882

v. ) 

) Honorable

CATHERINE DAGENAIS, ) William Penn 

Defendant-Appellant). ) Judge, Presiding

________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Under section 4-7(b) of the Probate Act of 1975 (Act)(755 ILCS 5/1-1 
et
 
seq.
(West 1996)), the disposition of property to a spouse is unequivocally revoked upon dissolution of marriage or annulment.  We are asked to determine whether 
this "revocation by divorce" provision applies to a testamentary disposition to a divorced spouse even though the testator executed his will prior to the marriage.  Applying the plain language of the Act, we hold that a will's execution before marriage to a beneficiary does not prevent the subsequent revocation of the legacy upon divorce.

FACTS

The facts of this case are uncontested.  Donald Forrest and Catherine Dagenais were friends who began cohabiting in 1978.  In November of that same year, Forrest executed a will that provided, in relevant part:

"I give all my personal and household effects not otherwise effectively disposed of ***, including policies of insurance thereon, to my friend, CATHERINE B. DAGENAIS, if she survives me for thirty days or, if she does not survive me, to my sister, ROSEANN FORREST, Frankfort, Illinois, a minor child.

*    *    *

I give all my residuary estate, being all real and personal property, *** as follows:

1. To my friend, CATHERINE B. DAGENAIS, if she survives me or; 

2. If my friend, CATHERINE B. DAGENAIS, does not survive me, to my sister, NANETTE FORREST, Frankfort, Illinois, as trustee." 

Forrest and Dagenais married in 1980.  Four years later they divorced.  In her affidavit, Dagenais stated that she and Forrest remained close friends even after they parted.  Forrest died in June 1996.  At no time between 1984 and his death did Forrest try to alter any provision of his will, nor did he revive or reexecute it. 

In April of 1997, Forrest's sister, Roseann, filed an appearance as sole legatee of Forrest's estate.  Prior to her appearance, her attorney sent a letter to Dagenais stating that Dagenais had no interest in the estate and requesting a waiver of any possible rights she might have under the will.  Soon thereafter, Nanette presented a petition to determine the proper devisee and legatee pursuant to the will.  After hearing oral arguments the trial court held that, pursuant to section 4-7(b) of the Act, the 1984 decree of dissolution between Forrest and Dagenais revoked every legacy or power of appointment given to Dagenais under the instrument.  Dagenais appeals.

STATUTORY HISTORY

Prior to 1957, a legacy in a will was not revoked by the subsequent dissolution of marriage of the testator. See 
Gartin v. Gartin
, 371 Ill. 418, 21 N.E.2d 289 (1939).  However, marriage by the testator did revoke any existing will executed by him prior to the date of marriage. Ill. Rev. Stat. 1953, ch. 3, par. 197.  This provision of the Act was commonly known as the "revocation by marriage" provision.  Because the statute did not expressly provide for revocation in case of divorce, courts refused to revoke a provision in a will upon dissolution of marriage, even by implication. See 
Kuhn v. Bartels
, 374 Ill. 231, 29 N.E.2d 84 (1940); 
Speroni v. Speroni
, 406 Ill. 28, 92 N.E.2d 63 (1950).  

However, by the 1950s, dissolution of marriage was becoming more frequent. See generally T. Atkinson, Law of Wills §85 (2d ed. 1953).  State lawmakers began recognizing that divorce constituted 
such a detrimental breakdown in a relationship that automatic alterations to a divorced spouse's testamentary plan were needed. 
Reeves v. Reeves
, 233 Cal. App. 3d 651, 284 Cal. Rptr. 650 (1991).  Legislatures also acknowledged the lax tendencies of the public concerning the making or reviewing of wills. See 
Matter of Estate of Knospe
, 165 Misc. 2d 45, 626 N.Y.S.2d 701 (1995).  In 1957, the Illinois General Assembly took a 
parens
 
patriae
 approach to protect our citizens from the repercussions of their probable inaction.  It amended section 46 of the Act to provide for revocation of a provision of a will by divorce, as well as complete revocation of a will by marriage. Ill. Rev. Stat. 1961, ch. 3, par. 46.  This sweeping change to the law of estates was emulated in numerous other states as well. See, 
e.g.
, 
Knospe
, 165 Misc. 2d at __, 626 N.Y.S.2d at 703 (discussion of legislative history of New York estate law); 
Reeves
, 233 Cal. App. 3d at 654, 284 Cal. Rptr. at 652; 
Davis v. Aringe
, 292 Ark. 549, 731 S.W.2d 210 (1987); 
In re Estate of Bloomer
, 620 S.W.2d 365 (1981). 

Continuing this trend, the Illinois legislature radically revised section 4-7(b) in 1966 to provide that divorce was the only change in circumstance that would revoke a preexisting will. Ill. Rev. Stat. 1965, ch. 3, par. 46.  Presently, section 4-7(b) of the Act states:  

"No will or any part thereof is revoked by any change in the circumstances, condition or marital status of the testator, 
except
 that dissolution of marriage or declaration of invalidity of the marriage of the testator revokes every legacy or interest or power of appointment given to *** the testator's former spouse in a will executed before the entry of the judgment of dissolution of marriage or declaration of invalidity of marriage and the will takes effect in the same manner as if the former spouse had died before the testator."  (Emphasis added.)  755 ILCS 5/4-7(b)(West 1996).

DISCUSSION

The paramount concern in construing a statute is to give effect to the intent of the legislature. 
Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public School District No. 172
, 291 Ill. App. 3d 221, 683 N.E.2d 530 (1997).  In determining legislative intent, the court must construe the language of the statute according to its plain and ordinary meaning. 
Illinois Bell Telephone Co. v. Illinois Commerce Comm'n
, 282 Ill. App. 3d 672, 669 N.E.2d 628 (1996).  If the language is certain and unambiguous, we need not refer to legislative history, but must enforce the statute as enacted. 
Bogseth v. Emanuel
, 166 Ill. 2d 507, 655 N.E.2d 888 (1995).  The construction of a statute is reviewed 
de
 
novo
. 
A.B. Dick Co. v. McGraw
, 287 Ill. App. 3d 230, 678 N.E.2d 1100 (1997).    

Initially, Dagenais contends that she is the proper legatee under Forrest's will because the letter she received from Roseann's lawyer asked her to waive any possible rights she might have under the will.  She claims that such a request amounts to an  acknowledgment that she was a legatee and devisee of the estate.  We disagree.  The letter Roseann's attorney sent to Dagenais emphasized that he believed that Dagenais had no interest in the estate because of the Act.  Such a correspondence does not support Dagenais's contention that Roseann acknowledged her interest under the will.

Dagenais's primary argument on appeal is that her status as a non-spouse at the time the will was executed prevents any revocation by her subsequent marriage to and divorce from Forrest.  She maintains that revocation should be determined based on the status of the parties at the time the will is executed, rather than looking to the parties' status at the time of the testator's death.  In support of her position, she urges us to utilize the statutory history applied in 
In re Estate of Day
, 7 Ill. 2d 348, 131 N.E.2d 50 (1955), and base our decision on the rule applicable to the law of revocation by marriage as it existed pre-1957.  

The statute effective prior to 1957 decreed that only marriage by the testator revoked a prior will. See Ill. Rev. Stat. 1953, ch. 3, par. 197.  The 
Day
 court analyzed whether a testator was conclusively presumed to have revoked his will if he married after the will was executed.  In resolving the issue, the court considered the circumstances surrounding the execution of the instrument.  It concluded that because the instrument was made in contemplation of marriage, it was not revoked by the parties' subsequent union. 
Day
, 7 Ill. 2d at 357-58, 131 N.E.2d at 55.

Unlike the revocation-by-marriage statute the 
Day
 Court considered, the current revocation-by-divorce provision of the Act plainly designates the status of the parties at the time of the testator's death as the triggering event.  Consequently, we refuse to apply the analysis of 
Day
 to the statutory provision at hand.  

Dagenais directs our attention to caselaw from another jurisdiction to bolster her argument. See 
In re Estate of Carroll
, 749 P.2d 571 (Okla. App. 1987).  The statute in that case revoked all provisions in favor of a divorced spouse if, after making a will, the testator divorced the beneficiary.  The Oklahoma appellate court inferred from the language of the statute that the state legislature assumed a martial relationship at the time the will was executed.  Thus, it concluded that the law applied only to wills executed after marriage. 
Carroll
, 749 P.2d at 574-75.

A majority of other jurisdictions which have addressed this issue have reached the opposite conclusion from the 
Carroll
 court.  Those courts relied on the plain language of each state's statute -- provisions analogous in word and purpose to section 4-7(b) of the Act. See 
Knospe
, 165 Misc. 2d at __, 626 N.Y.S.2d at 703 (by its own terms, statute revokes pre-marriage will provision naming future spouse when parties subsequently divorce); 
Reeves
, 233 Cal. App. 3d at 658, 284 Cal. Rptr. at 654 (plain language renders significant factor that the parties were married and subsequently divorced; when marriage occurred is irrelevant); 
In re Marriage of Duke
, 549 N.E.2d 1096 (Ind. App. 1990)(contemplating the plain language of the statute, the revocation-by-divorce provision applies equally when the will is executed prior to marriage). 

As did the legislative bodies in the above-mentioned cases, the legislature in Illinois made a radical departure from prior law in this state when it amended section 4-7(b) in 1966 to delete the revocation-by-marriage provision and include only revocation by divorce. Ill. Rev. Stat. 1965, ch. 3, par. 46.  Such a change was initiated to uphold the institution of marriage and prohibit a former spouse from inheriting from a spouse whom he had divorced. 
In re Estate of Pekol
, 148 Ill. App. 3d 1, 499 N.E.2d 88 (1986).  This purpose is no less compelling when the testator executes his will prior to his marriage to the primary legatee and devisee.  The relevant event is the divorce from the spouse-beneficiary.  Whether the spouse was a friend or an actual spouse at the time the will was executed is irrelevant. See 
Knospe
, 165 Misc. 2d at __, 626 N.Y.S.2d at 703.  Accordingly, we adopt the view taken by the majority of courts from other jurisdictions and hold that the revocation by divorce provision of the Act applies to a disposition to a former spouse, whether the testator executed his will before or after marriage to the beneficiary.

Nevertheless, because the legislature did not specifically address what happens when the will is executed prior to marriage, Dagenais insists the statute is ambiguous and should be construed liberally.  However, the statute, by its own terms, revokes a disposition to a former spouse in a will "executed before the entry of the judgment of dissolution."  755 ILCS 5/4-7(b)(West 1996).  There is no exception in section 4-7(b) for wills executed prior to marriage.  To adopt Dagenais's argument would be to read language into the statute that the legislature did not choose to include.  We find that the language of the statute is plain and unambiguous and requires no further construction. See 
Bogseth
, 166 Ill. 2d at 513, 655 N.E.2d at 891.

Last, Dagenais beseeches us to consider the circumstances surrounding the creation of Forrest's will.  She notes that she was named as a friend in the will and claims that she was a close friend both before and after the marriage.  Further, Forrest did not attempt to remove her from the instrument after their divorce.  Thus, to hold that the legacy was revoked by her divorce, she contends, would prevent her from taking an estate that she would have received had she never married Forrest.   

We acknowledge that the statute's application could lead, in some instances, to an incongruous result.  But as previously emphasized, we believe the language of the statute clearly controls our resolution of this case.  Whether Dagenais and Forrest started out as friends before the will was executed and remained friends after the divorce is of no consequence under the Act.  Divorce usually represents stormy partings and one generally does not wish to have his entire estate given to his former spouse upon his death.  The statute reflects the view that the usual bitterness of divorce justifies a presumption that the testator's failure to change his will after divorce is a forgotten change that he intended to make, rather than a continued expression of a former intent. See A. Wilmit 
Applying the Doctrine of Revocation by Divorce to Life Insurance Policies
, 73 Cornell L. Rev. 653 (1988).   Forrest had ample opportunity to expressly declare that he wanted Dagenais to still inherit his estate despite their divorce by executing a new testamentary instrument or by reviving the pre-

marriage will.  But he did not do so.   Accordingly, we find that section 4-7(b) of the Act revokes Dagenais's legacy even though Forrest executed his will before their marriage.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER and SLATER, JJ., concur.