No. 2--01--1198 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

BRANDY JOHNSON, Special Adm'r ) Appeal from the Circuit Court

of the Estate of Brejonna Moniq ) of Lake County.

Young, Deceased, )

                                )  

Plaintiff-Appellee, ) 

                                )

v.                              ) No. 00--L--72

                                )

PROVENA ST. THERESE MEDICAL )

CENTER, EXCEL EMERGENCY ROOM )

PHYSICIANS, L.L.C., TREVOR )

LEWIS, GILLIAN COLLUM, M.A. )

CARLTON, TRACY GAHGAN, and ) 

WILLIAM WOODS, ) 

)

Defendants )

) Honorable

(John E. Young, Jr., Claimant- ) Barbara C. Gilleran-Johnson,

Appellant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

John E. Young, Jr., the father of decedent, Brejonna Moniq Young, appeals from an order of the circuit court of Lake County that awarded him $8,000 as his share of a settlement obtained in a wrongful death action brought by Brandy Johnson, the mother of decedent and the special administrator of her estate.  We reverse and remand with directions.

FACTS

On April 9, 1999, Brejonna died as the result of the negligence of Betty J. Christiansen, an operator of an automobile that caused an accident resulting in the initial injury to Brandy and Brejonna, and the subsequent negligence of the health care providers at Provena St. Therese Medical Center (Provena), which resulted in Brejonna's stillbirth.  Brejonna was then an approximately eight-month-old viable fetus, having been conceived by Brandy and John, who had never married. 

Brandy was appointed special administrator for the purpose of prosecuting an action against 
defendant
s for the death of Brejonna. Thereafter, Brandy filed a complaint against 
defendant
s alleging that 
defendant
s' improper care resulted in the stillborn delivery of Brejonna.  Brandy alleged that Brejonna left surviving heirs and next of kin.

Although Christiansen was not involved in 
the
 underlying suit against 
defendant
s, Brandy filed a motion to approve a partial settlement of $100,000 with Christiansen.  The trial court approved the partial settlement.  After the payment of attorney fees and costs, $59,000 was available for distribution. 

Subsequently, a mediation was conducted with the named 
defendant
s.  Brandy and 
defendant
s entered into a settlement agreement in the amount of $630,000.  Thereafter, Brandy filed a motion to approve the settlement, pay attorney fees, and determine dependency for the purposes of a distribution.  The motion provides that, at the time of Brejonna's death, she left surviving her mother, Brandy; her sister, Janea Eternal Young; and her father, John.  The motion requests that Janea, born July 17, 1996, receive a portion of the net settlement of the estate as a structured settlement in the form of a $50,000 annuity.  A second motion to approve the settlement requested that the net proceeds of approximately $395,000 be apportioned between the parents because Janea had already received her portion.  The trial court approved the settlement and authorized the payment of attorney fees, costs, and expenses.  The court also ordered that the remaining sum of $395,354 be deposited into an interest-bearing account until dependency and entitlement were determined.  It is this amount, plus the $59,000 from the partial settlement, that the trial court was asked to apportion among the surviving next of kin.

At the evidentiary hearing, the trial court heard argument concerning the manner in which the settlement should be distributed.  Brandy argued that, under the Wrongful Death Act (740 ILCS 180/1 
et
 
seq.
 (West 2000)), a settlement should be distributed among the heirs of the decedent pursuant to the laws of descent and distribution.  Because the decedent was illegitimate, Brandy contended that, pursuant to section 2--2 of the Probate Act of 1975 (Probate Act)(755 ILCS 5/2--2 (West 2000)), only an eligible parent of an illegitimate can inherit.  To prove eligibility under section 2--2, Brandy argued, John must present evidence that during decedent's lifetime he acknowledged the decedent as his child, established a parental relationship with the decedent, and supported the decedent as the child's parent.  755 ILCS 5/2--2 (West 2000).  Although Brejonna was stillborn, Brandy believed that John's eligibility could be determined by looking to the role he played in Janea's life. 

John disagreed.  He argued that comparing the role he played in Janea's life to the role he would have played in Brejonna's life would be pure speculation and would place an undue burden on him to prove eligibility.  John argued that the law presumes a parent sustains substantial pecuniary loss for the loss of the child's society when a decedent leaves a surviving parent.  Because neither Brandy nor John had the opportunity to know Brejonna, John argued that their loss was equal
 and, therefore, the
 distribution should be shared equally.  Over John's objections, however, the court believed that 
the
 eligibility criteria needed to be equally established by both sides.  

Brandy presented evidence of John's relationship, or lack thereof, with his daughter Janea.  Brandy also introduced evidence of John's criminal background, including evidence that he had been incarcerated at the time of Brejonna's death and previously had been convicted.  Brandy also presented evidence showing that John did not financially support Janea or financially assist her while she was pregnant with Brejonna.  

Testimony further revealed that on April 31, 2000, 15 months after Brejonna's death, Brandy gave birth to Qyshaan Johnson, who  is Brejonna's half-brother.  Additionally, a photograph was introduced depicting John with his daughter Janea and son Roderick, who, according to John's testimony, is his son by another woman.

Following the hearing of 
the
 respective claimants' entitlement to the proceeds, the trial court stated:

"And to be succinct, I simply think that we can resolve this case by answering the threshold question of whether or not Mr. Young is an eligible parent, as that term is defined in the statute, in the negative, it doesn't satisfy -- well, it satisfied one of three factors, which is that he did acknowledge paternity, which he did at a time after he discovered there was some profit to be made thereby.  And so, I don't think we need even reach the issue of what degree of dependency Mr. Young had on Brejonna, because the statute that defines an eligible parent was adopted by the legislature in reaction to the court's decision in the Hicks case.  While I believe the court said that you can't have a blanket rule that fathers of illegitimates can't recover, you can have a rule that says they have to prove that they're a father in more than simply the genetic sense before they can be in the line of descendant distribution.

And the cases we cited from the United States Supreme Court I think accurately set forth public policy that the government has in seeing that the fathers of illegitimate children remain part of their lives, both emotionally and financially.  And I think the evidence shows in this case that Mr. Young clearly didn't do that, which he had the onus of.  And I believe there's absolutely nothing in the record before us [to] indicate that Brejonna, had she survived, he would have treated her any different than he has Janea.

* * *

I believe that he has suffered little, if no loss, and has no reasonable expectation of any pecuniary benefits due to this child's death, be it stillborn, or trying to show that the five year [old] has his relationship.  I think that the evidence has shown to the contrary that, in fact, his relationship would be limited with this particular child.  I believe the mother would have provided for that child."

The trial court then issued the following written order, in relevant part: 

"3.  There remains a net amount of [$455,354.78] plus accrued interest remaining in the Estate of Brejonna Moniq Young, deceased, for distribution to the next of kin pursuant to [section 2 of the Wrongful Death Act]. 

4.  That due to the stillbirth of the decedent Brejonna Moniq Young, the Court can make no determination of eligibility pursuant to [section 2--2 of the Probate Act] and therefore finds both Brandy Johnson and John E. Young, Jr. to be next of kin of Brejonna Moniq Young as that term is contemplated by [section 2 of the Wrongful Death Act];

5.  That Qyshaan Johnson, whose birth to Brandy Johnson post-dated the death of the decedent, is a next of kin of Brejonna Moniq Young pursuant to the terms of [section 2--3 of the Probate Act];

6.  That the degree of dependency of Brandy Johnson on the decedent Brejonna Moniq Young is substantial.

7.  That the degree of dependency of Qyshaan Johnson on the decedent Brejonna Moniq Young is equal to that degree of dependency of Janea Young on decedent Brejonna Moniq Young;

8.  That the degree of dependency of John E. Young, Jr. on the decedent Brejonna Moniq Young is 
de
 
minimus
.

9.  That John E. Young is entitled to [$8,000] or 1.756% of the net proceeds in the estate as his share of the distribution of the assets of the estate;

10.  That the clerk shall deduct from that amount the arrearage in child support owed by John E. Young, Jr. as Respondent in the case of 
In re the Parentage of Janea Young
, presently pending in the Circuit Court of Lake County as Case No. 99 F 101 in the amount of [$2,380] which amount shall be paid to Brandy Johnson;

11.  That the net amount due John E. Young, Jr. of [$5,620] shall be made payable to John E. Young, Jr. and [his attorney];

12.  That [$50,000] of the net balance in the estate shall be used to purchase an annuity in favor of Qyshaan Johnson on the same terms as have been approved by prior order of court for Janea Eternal Young.

***

13.  That the balance of the estate in the amount of [$397,354] plus interest accrued to date to be distributed to Brandy Johnson as the mother of Brejonna Moniq Young, deceased."

John filed a timely notice of appeal. 
 The
reafter, the trial court permitted a distribution of $50,000 to Brandy and a payment of $8,340 for attorney fees.  The remainder of the settlement remains in an account until further order of the court.  The trial court also appointed counsel for Qyshaan Johnson.

ANALYSIS

I.  Waiver

Initially, we must address Brandy's contention that John has waived any argument that the trial court erred in considering his paternal relationship with Janea by failing to object to the admission of such evidence at the hearing.  The record shows, however, that John did object to this evidence by asserting that it was prejudicial to compare the role he played in Janea's life to determine his entitlement to the wrongful death proceeds.  

Brandy further argues that John failed to preserve for appeal his right to challenge the award to Janea because that award was made in an order entered on June 28, 2001, and John appeals only the order entered on October 17, 2001, which distributes the remainder of the settlement proceeds between John, Brandy, and Qyshaan.  Brandy also points out that Brejonna's estate filed a motion to approve the distribution in favor of Janea and, even though John's attorney was aware of the motion and the hearing date, he never objected to the distribution.  Although John's notice of appeal does not specify that he is also appealing from the order of the award made to Janea entered on June 28, 2001, we find that the unspecified order is reviewable because "it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal."  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 435 (1979), quoting 
Elfman Motors, Inc. v. Chrysler Corp.
, 567 F.2d 1252, 1254 (3d Cir. 1977).  Accordingly, we find no waiver or jurisdictional defect.

II.  Issues and Standard of Review

Turning now to the remainder of the issues raised on appeal, John argues that the trial court abused its discretion by comparing his past relationship with Janea to determine his future relationship with Brejonna and that the trial court's reliance on the factors set forth in section 2--2 of the Probate Act to determine his entitlement to the wrongful death proceeds placed an undue burden on him to prove his degree of dependency as required under the Wrongful Death Act.  John continues to assert, as he did in 
the
 trial court, that 
the
 parents and Janea share the distribution equally because the law presumes a parent sustains substantial pecuniary loss for the loss of a stillborn child's society and because neither 
the
 parents nor Janea had the opportunity to know Brejonna.  In addition, John contends that the trial court's award constituted a denial of equal protection by presuming that John would not be involved in his illegitimate child's life simply because he is a man and the settlement was improperly based upon allegations of irrelevant wrongful and criminal conduct.  Both parties agree, however, that the trial court erred in distributing a portion of the award to Qyshaan because he was born 15 months after the death of Brejonna and is not a posthumous child.  We find that the trial court erred by failing to identify the proper eligible beneficiaries, by applying the wrong standard in distributing the property, and by failing to protect the rights of the eligible minor beneficiaries.

Generally, 
the
 division of an award in a wrongful death action is left to the circuit court's discretion.  
Adams v. Turner
, 198 
Ill. App. 3d
 353, 356 (1990).  However, our holding rests on the relationship of section 2 of the Wrongful Death Act and section 2--2 of the Probate Act.  The paramount concern in construing a statute is to give effect to the intent of the legislature.  In order to answer this question, we must ascertain the meaning of the statute.  
In re Estate of Forrest
, 302 Ill. App. 3d 1021, 1024 (1999).  To ascertain the legislature's intent, the court must construe the language of the statute according to its plain and ordinary meaning.  
Forrest
, 302 
Ill. App. 3d
 at 1024.  Where the language is clear and unambiguous, we need not refer to legislative history but must enforce the statute as enacted.  
Forrest
, 302 
Ill. App. 3d
 at 1024.  Also, as the Probate Act creates a cause of action that was unknown at common law, we must construe it strictly, declining to read into the statute qualifications the legislature did not specify.  
Rallo v. Crossroads Clinic, Inc.
, 206 Ill. App. 3d 676, 680-81 (1990); 
Forthenberry v. Franciscan Sisters Health Care Corp.
, 156 Ill. App. 3d 634, 636 (1987).  The construction of a statute is reviewed 
de
 
novo
. 
 
Forrest
, 302 
Ill. App. 3d
 at 1024.
  

III.  The Wrongful Death Act

A basic understanding of the Wrongful Death Act is helpful to our determination.  The wrongful death statutory provisions seek to protect the legal right of survivors to be compensated for the pecuniary loss they may have sustained by reason of the death of the injured person.  
Johnson v. Village of Libertyville
, 150 
Ill. App. 3d
 971, 973 (1986).  Section 2 of the Wrongful Death Act provides, in relevant part:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and *** the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse an
d
 next of kin of such deceased person.

*** 

The amount recovered in any such action shall be distributed by the court in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.

* * *

The trial judge shall conduct a hearing to determine the degree of dependency of each beneficiary upon the decedent.  The trial judge shall calculate the amount of damages to be awarded each beneficiary, taking into account any reduction arising from either the decedent's or the beneficiary's contributory fault."  740 ILCS 180/2 (West 2000).

The first paragraph of section 2 governs the recovery against the tortfeasor by the administrator of the estate.  
Fontanne v. Federal Paper Board Co.
, 105 
Ill. App. 3d
 306, 313 (1982).  The next two paragraphs do not apply to suits against the tortfeasors.  Rather, they govern the distribution of whatever amount is recovered in the tort action, whether it is recovered by jury trial or by an agreed settlement.  
Fontanne
, 105 
Ill. App. 3d
 at 314. 

For purposes of determining who is entitled to damages under 
the
 Wrongful Death Act, just compensation may be awarded to the "next of kin" of a decedent.  "Next of kin" are those blood relatives of 
the
 decedent who are in 
existence
 at the time of the decedent's death who would take the decedent's property if 
the
 decedent had died intestate.  
Miller v. Kramarczyk
, 306 
Ill. App. 3d
 731, 732-33 (1999).  Under the statutory rules of intestate descent of the Probate Act, if there is no surviving spouse or descendant but a parent, brother, sister, or descendant of a brother or sister of the decedent, the estate passes to the parents, brothers, sisters, and nephews and nieces of the decedent.  755 ILCS 5/2--1(d) (West 2000).  No distinction is made between the "kindred of the whole and the half blood."  755 ILCS 5/2--1 (West 2000).  Applying these principles and rules to the present case, the eligible beneficiaries to the wrongful death proceeds include Brejonna's natural parents, siblings, and half-siblings who were in existence at the time of Brejonna's death.

Here, the trial court identified Qyshaan as a "posthumous child" because his "birth to Brandy Johnson post-dated the death of the decedent" and awarded him a $50,000 annuity.  A "posthumous child" does not have to be living at the time of the decedent's death in order to share in the decedent's estate.  Section 2--3 of the Probate Act (755 ILCS 5/2--3 (West 2000)) provides that a child born after the death of the intestate decedent is entitled to his or her just portion of the estate in all respects as though he or she had been born during the life of the decedent.  However, a "posthumous child" is defined as a child born after the death of his or her 
parent
.  Qyshaan is not a lineal descendent of Brejonna,  and, because Qyshaan was born 15 months after his half-sister Brejonna died, he clearly was not in existence at the time of Brejonna's death and should not have been considered an eligible beneficiary.  Accordingly, the trial court erred by identifying Qyshaan as an eligible beneficiary and awarding him a $50,000 annuity. 

Additionally, the evidence reveals that John has a son named Roderick, John's son by another woman.  Photographs taken in 1997 were introduced into evidence, which depicted John with his children Roderick and Janea.  It is clear that Roderick is a half-brother of Brejonna who was in existence at the time of her death.  Accordingly, the trial court erred by failing to identify Roderick as an eligible beneficiary of Brejonna's estate.  

We note at this juncture that Brandy, as the administrator of Brejonna's estate, stands in a fiduciary relationship to the beneficiaries under the Wrongful Death Act.  See 
Johnson v. Village of Libertyville
, 150 
Ill. App. 3d
 971, 974 (1986).  As such, Brandy is obligated to act in the utmost good faith to protect the beneficiaries' interests and must exercise at least that degree of skill and diligence that a reasonably prudent person devotes to his or her personal affairs.  
Johnson
, 150 
Ill. App. 3d
 at 974-75.  Brandy therefore has an obligation to identify and notify those individuals who are the proper eligible beneficiaries of the wrongful death award.

In addition, it is the duty of the court to protect the interests of minors, and it is bound to notice substantial irregularities even though objections are not properly presented on the minors' behalf.  
Muscarello v. Peterson
, 20 Ill. 2d 548, 555 (1960).  The trial court should have insured that the rights of Roderick and any other siblings were preserved.  We note that on remand the trial court can accomplish this by ordering John to file an affidavit of parentage and ordering Brandy to ascertain whether other eligible beneficiaries existed at the time of Brejonna's death.  The trial court also may appoint guardians 
ad
 
litem
 for the minor beneficiaries, including Roderick, Janea, and unknown heirs.

IV.  Standard Governing the Distribution of the Settlement

In the trial court's written order, the trial court stated that section 2--2 of the Probate Act (755 ILCS 5/2--2 (West 2000)) did not control the distribution of the settlement.  However, it is clear from the transcripts of the hearing that the trial court directed the parties to use the "eligibility" requirements of section 2--2 to prove their degree of entitlement to the proceeds of the wrongful death settlement.  John argues that the trial court erred by relying on a statute that had no bearing on the present case and by failing to apply the correct standard in distributing the wrongful death settlement.  We agree.

Section 2--2 governs the rules of inheritance from illegitimate children and is unrelated to a wrongful death action.  It provides that an "eligible" parent of an illegitimate decedent who dies intestate may inherit from the decedent's estate if 
the
 parent of the decedent shows that "during the decedent's lifetime" the parent (1) acknowledged the decedent as the parent's child; (2) established a parental relationship with the decedent; and (3) supported the decedent as the parent's child.  755 ILCS 5/2--2 (West 2000). 

In 1955, an amendment to the Wrongful Death Act altered the method of distribution.  Before 1955, the award was distributed according to intestate succession under the Probate Act.  See Ill. Rev. Stat. 1955, ch. 70, par. 2.  Now, the proper beneficiaries of a wrongful death settlement are determined according to the law of intestacy.  
Morris v. William L. Dawson Nursing Home Center, Inc.
, 187 Ill. 2d 494, 497 (1999).  However, 
the
 guidelines set forth in section 2 of the Wrongful Death Act provide the basis for determining how the wrongful death proceeds are distributed.  740 ILCS 180/2 (West 2000).  We note that the facts of 
In re Estate of Poole
, 328 Ill. App. 3d 964 (2002), are similar to the facts of the present case.  However, 
Poole
 involved letters of administration under section 9--3 of the Probate Act (755 ILCS 5/9--3 (West 1998)), and, therefore, we find it inapplicable to the present case.

V.  Distribution of the Settlement

Under section 2, the distribution of the wrongful death proceeds must be based on the proportionate percentages of the eligible beneficiaries' dependency on the decedent.  
Adams v. Turner
, 198 Ill. App. 3d 353, 356 (1990).  There is no mathematical calculation or formula for determining the division of an award.  
In re Estate of Williams
, 223 Ill. App. 3d 505, 509 (1992).  The statute speaks only of proportions, the proportions of dependency to the total amount of dependency.  
In re Estate of Keeling
, 133 
Ill. App. 3d
 226, 229 (1985). 
 For clarity, we recommend that the trial court assign percentages to each of the eligible beneficiaries.

Moreover, "dependency" has not been defined by the legislature. 
 
Keeling
, 133 
Ill. App. 3d
 at 229.  In most cases, "dependency" implies the presence of a previously existing relationship.  It also connotes support.  "Dependency," however, is not limited simply to a previous relationship with a decedent. 
 It also includes loss of society.  
Adams
, 198 
Ill. App. 3d
 at 356-57.  In the context of establishing the existence and extent of damages for the loss of a child, the 
supreme court held that a rebuttable presumption for the loss of society exists for the wrongful death of a stillborn child.  
Seef v. Sutkus
, 145 Ill. 2d 336, 339 (1991); see also 
Smith v. Mercy Hospital & Medical Center
, 203 
Ill. App. 3d
 465 (1990).  Although siblings may recover damages for pecuniary injuries resulting from a wrongful death (
In re Estate of Finley
, 151 Ill. 2d 95, 103 (1992)), we have not found any decision holding that there is a rebuttable presumption for the loss of a stillborn sibling's society.

We believe that, in the context of distributing the wrongful death proceeds, the rebuttable presumption for lost society for the wrongful death of a parent's stillborn child should be considered by the trial court.  The Wrongful Death Act by its very nature contemplates compensating parents for their loss caused by the 
defendant
's negligence or wrongful act.  The very purpose of the Wrongful Death Act is to provide 
the
 eligible beneficiaries with the benefits that "would have been received from the continued life of the decedent."  
Elliott v. Willis
, 92 Ill. 2d 530, 540 (1982).  The parents' pecuniary interests are reflected in the amount of damages received.  We see no reason why this pecuniary interest should be ignored in the distribution of the settlement. 

We recognize that the final determination of the degree of dependency and of the distribution of the wrongful death settlement is left to the discretion of the trial court.  
In re Estate of Williams
, 223 
Ill. App. 3d
 505, 509 (1992).  We also realize that, simply because the parents of a stillborn child are presumed to have suffered a loss of the child's society, it does not inevitably follow that parents may be awarded equal damages.  The presumption is still rebuttable.  Parents may have been equally deprived of the love and affection of a stillborn but may not have been equally deprived of that child's companionship had she or he survived.  While section 2--2 of the Probate Act governs the rules of inheritance, we understand that the "eligibility" requirements of section 2--2 may overlap with those factors considered by the trial court when determining the degree of dependency under the Wrongful Death Act.  Both the eligibility requirements of section 2--2 of the Probate Act and the determination of the degree-of-dependency requirement of section 2 of the Wrongful Death Act address similar policy concerns, namely, preventing absentee parents from obtaining more than the share to which they are entitled.  Thus, evidence of which parent would have been the custodial parent or evidence of whether the parent would have played a significant role in the life of the deceased is relevant to support or rebut the presumption of lost society.   
Evidence as to whether the siblings would have lived in the same home with the decedent may also be relevant. 

CONCLUSION

We conclude that the trial court failed to ascertain the proper beneficiaries, failed to employ the degree-of-dependency standard in determining the distribution of the wrongful death proceeds, and failed to protect the rights of the eligible minor beneficiaries.  Because we reverse the judgment of the trial court on this basis, we need not address the constitutional issue.  See 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 396 (1994)(constitutional issues need not be addressed if matter is reversed on other grounds).  

Accordingly, we reverse the settlement award in its entirety and remand the cause for a new hearing.  The administrator of Brejonna's estate is directed to ascertain and notify all eligible beneficiaries and unknown heirs.  The trial court is directed to protect the interests of
 the eligible minor beneficiaries and unknown heirs.

One final matter must be addressed before closing.  Although the parties do not raise this issue, the record does not reveal what authority the trial court relied upon in ordering that the clerk deduct $2,380 from John's share of the wrongful death proceeds to pay the child support arrearage in an unrelated case.
  We therefore direct the parties and the court to address this matter if it arises during remand.

Based on the foregoing, we reverse the judgment of the trial court and remand the cause for a new hearing. 

Reversed and remanded with directions.

O'MALLEY and GROMETER, JJ., concur.