418 So.2d 256 (1982)
ESTATE OF Frederic F. GANIER, Petitioner,
v.
ESTATE OF Emma Kennedy GANIER, Respondent.
No. 60886.
Supreme Court of Florida.
July 29, 1982.
John R. Godbee, Jr. of Coble, McKinnon, Rothert, Barkin, Clayton, Vukelja & Godbee and Ollie Lancaster, Jr., Daytona Beach, for petitioner.
Richard S. Graham of Landis, Graham, French, Husfeld, Sherman & Ford and W. Richard Every, Daytona Beach, for respondent.
OVERTON, Justice.
This is a petition to review the decision of the Fifth District Court of Appeal in Estate of Ganier v. Estate of Ganier, 402 So.2d 418 (Fla. 5th DCA 1981), which we find directly conflicts with In re Steinert's Estate, 137 So.2d 856 (Fla. 2d DCA 1962). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue concerns the rights of a surviving spouse in the estate of the decedent spouse whose will was executed prior to *257 their marriage. It requires a construction and interpretation of Florida's pretermitted spouse statute, section 732.301, Florida Statutes (1979), as it relates to the Florida case law in force before the enactment of the Florida Probate Code of 1933. For the following reasons, we approve the interpretation of section 732.301's predecessor statute in Steinert's Estate, that a spouse is protected and entitled to an intestate share of the decedent spouse's estate under this statutory provision unless the will executed prior to marriage provides for the named surviving spouse and was executed in contemplation of marriage to that spouse. We quash the opinion of the district court in the instant case.
This case arose as the result of the marriage of two senior citizens, Emma Kennedy and Frederic Ganier. They met in 1973, when she was 79 years old and he was 76 years old, became close friends, and eventually shared a joint bank account from which they paid their living expenses. In January, 1977, Mrs. Kennedy executed a will which included a provision bequeathing two of her personal bank accounts to Fred Ganier. Mrs. Kennedy and Mr. Ganier were married approximately eighteen months after this will was executed, in July, 1978. Shortly after the marriage, Emma Ganier suffered a stroke; she was declared incompetent in November, 1978, and, on December 16, 1978, Mr. Ganier was appointed her guardian. In October, 1978, before she was found incompetent, Mrs. Ganier closed one of the bank accounts she had bequeathed to Mr. Ganier, and, after he became his wife's guardian, Mr. Ganier had the second account bequeathed to him transferred to Mrs. Ganier's guardianship account. Mr. Ganier expended almost all the funds from the guardianship account prior to Mrs. Ganier's death, which occurred January 7, 1979.
When Mrs. Ganier's 1977 will was admitted to probate, Mr. Ganier filed a petition in the trial court for a determination of beneficiaries. In this petition, Mr. Ganier asserted that he was entitled to an intestate share of his wife's estate because he was a pretermitted spouse within the meaning of section 732.301, Florida Statutes (1979), which provides:
Pretermitted spouse.  When a person marries after making a will and the spouse survives the testator, the surviving spouse shall receive a share in the estate of the testator equal in value to that which the surviving spouse would have received if the testator had died intestate, unless:
(1) Provision has been made for, or waived by, the spouse by prenuptial or postnuptial agreement;
(2) The spouse is provided for in the will; or
(3) The will discloses an intention not to make provision for the spouse. The share of the estate that is assigned to the pretermitted spouse shall be obtained in accordance with s. 733.805.
At the hearing, Mr. Ganier testified that he and Mrs. Ganier did not discuss marriage until long after the will in question was executed. No evidence was offered to refute this testimony.
The trial court determined that Mr. Ganier was a pretermitted spouse under the statute, finding that the two bank accounts Mrs. Ganier had left to Mr. Ganier in her will were not controlling, and stating:
[S]aid provision in testatrix's Last Will and Testament did not constitute a provision for Frederic F. Ganier, also known as Fred Ganier, as testatrix's spouse, within the purview of Section 732.301(2), Florida Statutes. No testimony or evidence was offered in this cause to support the view that testatrix contemplated marriage to petitioner, Frederic F. Ganier, also known as Fred Ganier, at the time of the execution of her will. Said reference to petitioner was not made to him in the prospective status as husband of the testatrix; therefore, even though petitioner who was designated by name as a beneficiary in testatrix's will, but who after will was executed, became testatrix's husband, was not "provided for in the will" within said statute limiting right of pretermitted surviving spouse to take a *258 spouse's intestate share against decedent's will. See In re Steinert's Estate, Florida App., 137 So.2d 856.
The trial court alternatively found that the two bank accounts devised to Mr. Ganier did not exist when Mrs. Ganier died so that there was no provision in the will for Mr. Ganier because the specific bequest had "lapsed."
The district court, in a split decision, reversed, finding that section 732.301(2) requires only that the surviving spouse be "provided for" in a will executed before marriage, and rejected the trial court's conclusion that this statutory provision would apply only if Mrs. Ganier had contemplated marriage to Mr. Ganier at the time she provided for him in her will. The district court, in reversing, found no basis for reading into Florida's pretermitted spouse statute the prior case-law requirement that the provision in the will be made "in contemplation of marriage." The district court recognized that this holding was in direct conflict with the decision of the Second District Court of Appeal in Steinert's Estate, but concluded that the Second District had receded from Steinert's Estate in In Re Livingston's Estate, 172 So.2d 619 (Fla. 2d DCA 1965). We disagree.
Florida courts early recognized the rule of law which developed to prevent the inadvertent disinheritance of a spouse whom the testator had married after executing a will.[1] Our case law distinguished between a man's will and a woman's will and was expressed by this Court in two early cases. In Belton v. Summer, 31 Fla. 139, 12 So. 371 (1893), we held that a man's previously executed will was revoked by a subsequent marriage and the birth of a child, unless the will was executed in contemplation of marriage. In Colcord v. Conroy, 40 Fla. 97, 23 So. 561 (1898), we held that a woman's will was revoked by her marriage alone unless it was executed in contemplation of marriage. Other states had similar rules of law and many have codified these rules in statutes providing that, upon subsequent marriage, the will of either spouse is revoked unless the will provides for the surviving spouse or evidences the testator's intent not to so provide.[2] In some states, the statute itself requires that provision be made "in contemplation of marriage," while in other states, the courts have read the requirement into the statute.[3] The purpose of these statutes is the same as that of our case law: to avoid the inadvertent disinheritance of a spouse whom the testator married after executing a will.
This rule, with its total revocation provisions, solves one problem, that of protecting the surviving spouse's interest in the decedent spouse's estate by assuring that the surviving pretermitted spouse receives an intestate share of the estate. But, in doing so, it creates another problem by revoking the entire will. This results in all beneficiaries under the will who are not entitled to intestate distribution being foreclosed from receiving any bequest or devise.
To achieve a more equitable balance between the interests of the surviving spouse and the interests of the takers under the will, the Florida Legislature modified the revocation rule in the Probate Act of 1933, chapter 16103, Laws of Florida.[4] Section 11, chapter 16103, provides:
MARRIAGE AFTER EXECUTION OF WILL.  When a person marries after making a will, and the spouse survives the testator, such surviving spouse shall receive a share in the estate of the testator equal in value to that which such surviving spouse would have received if the testator had died intestate, unless *259 provision has been made for such spouse by marriage contract, or unless such spouse is provided for in the will, or unless the will discloses an intention not to make such provision. The share of the estate which is assigned to such pretermitted spouse shall be raised in accordance with the order of appropriation of assets set forth in this Act.
Section 15, chapter 16103, provides: "Neither subsequent marriage nor subsequent marriage and birth of issue shall revoke the prior will of any person; but the pretermitted child or spouse shall inherit as set forth in this Act regardless of such prior will." By these enactments, the legislature superseded prior case law in order to protect beneficiaries under the will from complete termination of their bequests. We find that the legislature, in modifying our judicially-established rule, had no intention of eliminating the "in contemplation of marriage" requirement in circumstances where the will provides for the surviving spouse, but was not made with the understanding that it was for the individual as a surviving spouse. Neither of these statutes requires such a construction, and the substance of sections 11 and 15 has not been changed since the Probate Act of 1933. These sections are now codified as sections 732.301 and 732.507 of our current law.[5]
Section 732.301(1)-(3) simply defines statutorily the "in contemplation of marriage" requirement. These three statutory provisions set forth the methods by which a will executed prior to marriage can be valid as to the surviving spouse, and they encompass all the situations in which a testator considers the effect of an upcoming marriage on the disposition of the estate and acts in contemplation of that marriage. A testator may evaluate an existing will and indicate the decision to leave the will untouched by executing a prenuptial or postnuptial agreement, section 732.301(1); a testator may change the will to provide for the intended spouse, section 732.301(2); or a testator can expressly disclose in the will a decision not to provide for the intended spouse, section 732.301(3). In each case, the testator must act "in contemplation of marriage" in order to avoid inadvertently failing to provide for an intended spouse in the capacity of spouse.
Steinert's Estate is the only decision, other than the decision in the instant case, to directly construe the meaning of section 732.301(2). The facts of Steinert's Estate are similar to those in the instant case. In 1955, the testator, George F. Steinert, executed a will which contained a bequest of thirty thousand dollars to Mrs. Levites, then married and living out-of-state. Mrs. Levites obtained a divorce and, in 1957, married Mr. Steinert, who died in 1958 without having made another will. Mrs. Steinert, formerly Mrs. Levites, argued that she was entitled to an intestate share of her deceased husband's estate as a pretermitted spouse under section 731.10, Florida Statutes (1961).[6] The district court agreed, finding that "[n]o evidence was offered here to support the view that testator contemplated marriage to appellee at the time of the execution of his will." 137 So.2d at 858.
The conclusion of the district court in the instant case, that the Second District Court of Appeal in In re Livingston's Estate, 172 So.2d 619 (Fla. 2d DCA 1965), receded from its prior decision in Steinert's Estate, is, in our view, erroneous. Although not controlling in this case, we believe it clear that the Second District, in Livingston's Estate, merely clarified which party had the burden of proving the "in contemplation of marriage" requirement. The Livingston court held that "where one marries after making a will, and the spouse survives the testator, *260 and such will contains a provision for such survivor, such survivor would have the burden of alleging and proving that such will failed to provide for them as contemplated by F.S. § 731.10, F.S.A." 172 So.2d at 620. (Emphasis added.) We conclude that the court in Steinert's Estate and in Livingston's Estate correctly interpreted Florida's pretermitted spouse statute.
The requirement that a will executed before marriage provide for a spouse in the capacity of spouse is consistent with the purposes of our prior case law and of Florida's Probate Code, chapters 731-735, Florida Statutes (1979). Marriage effects a profound change in a person's relationships and responsibilities. Substantially different considerations underlie a person's bequest to a friend or acquaintance and that person's testamentary provision for the well-being of a spouse. We hold that a spouse has not been "provided for," within the meaning of section 732.301(2), unless the testator both provided for a person named in the will executed before marriage and made such provision in contemplation of marriage to that named person.[7]
In the instant factual situation, the question which must be resolved is whether Mrs. Ganier provided for Fred Ganier, in contemplation of her marriage to him, as her future spouse. We accept the holding in Livingston's Estate that, when a will executed before marriage contains a provision for a named individual who later becomes the testator's spouse, the surviving spouse has the burden of proving that the provision was not made in contemplation of marriage. Absent such proof, the surviving spouse will not be considered "pretermitted" and will, therefore, not be entitled to an intestate share of the estate. This proof need not be found in the will itself; evidence of the circumstances existing at the time of the will's execution is admissible in meeting this burden. Cf. Perkins v. Brown, 158 Fla. 21, 27 So.2d 521 (1946) (evidence of surrounding circumstances admissible to prove that testator intended not to make provision for spouse).
The marriage of this elderly couple admittedly did not take place until eighteen months after the will's execution. The surviving spouse, Mr. Ganier, testified that he and the testatrix, Mrs. Ganier, did not discuss marriage until long after the will in question was executed. The record further reflects that no other evidence was offered to refute this testimony. The trial court found that "[n]o testimony or evidence was offered in this cause to support the view that testatrix contemplated marriage to ... Fred Ganier, at the time of the execution of her will." We conclude that, on the basis of this record, the trial court could properly find that Mr. Ganier was a pretermitted spouse, entitled to an intestate share of Mrs. Ganier's estate. We note that Mr. Ganier had allegedly misappropriated guardianship funds. This is a serious charge, but it should be resolved in the separate guardianship accounting proceedings.
*261 The primary purpose of the pretermitted spouse rule is to assure that the decedent spouse considered the surviving spouse as a spouse when making his or her will. Eliminating the "in contemplation of marriage" requirement, as held by the district court, defeats the reason for the rule. For the reasons expressed, the decision of the district court below is quashed and this cause is remanded to reinstate the trial court's judgment.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, SUNDBERG, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] For a discussion of Florida law regarding revocation of wills upon subsequent marriage, see E. Simon, Redfearn Wills and Administration in Florida § 8.10, at 106-09 (5th ed. 1977). For a general discussion of English common and canon law and American common and statutory law on this topic, see 2 W. Bowe & D. Parker, Page on the Law of Wills §§ 21.86-.103, at 496-526 (rev. treatise 1960).
[2] See cases collected at Annot., 97 A.L.R.2d 1026 (1964).
[3] Id.
[4] See also sections 5457(1) 5541(159), Compiled General Laws (1927) (Supp. V 1936).
[5] See supra note 1. Section 732.507(1) provides: "Neither subsequent marriage nor subsequent marriage and birth or adoption of lineal descendants shall revoke the prior will of any person, but the pretermitted child or spouse shall inherit as set forth in ss. 732.301 and 732.302, regardless of the prior will."
[6] This section preceded section 732.301 and contained essentially the same language as its successor statute.
[7] Our construction of section 732.301 is supported by the California Supreme Court's construction of a similar statute, California Probate Code, section 70 (Deering 1974). That statute provides:

Marriage after making of will: Revocation as to spouse
If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision... .
Although the means are somewhat different, section 70 achieves the same effect as sections 732.507(1) and 732.301. The will is revoked only as to the surviving spouse, who takes an intestate share, while the remaining provisions of the will continue to be valid. In re Piatt's Estate, 81 Cal. App.2d 348, 183 P.2d 919 (Ct. App. 1947). As does section 732.301(2), section 70 provides that a surviving spouse will not take an intestate share if "the spouse is provided for in the will." In construing this language, the California Supreme Court, mindful of the significant change in a testator's circumstances upon marriage, held that "merely naming or giving a legacy to a person by name, ... with no indication that she may be a prospective spouse, is not enough to prevent revocation." In re Poisl's Estate, 44 Cal.2d 147, 150, 280 P.2d 789, 792 (1955).