DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HELEN CARROLL,**
Appellant,

v.

**STUART G. ISRAELSON,** as Personal Representative of the Estate of
Thomas Jeffrie Carroll, **STUART G. ISRAELSON** and **LOUIS E.
FRIEDMAN,** as Co-Trustees of the Wendy Family Trust,
**LARA ISRAELSON** and **JAY ISRAELSON,**
Appellees.

No. 4D13-4532

[July 1, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Charles M. Greene, Judge; L.T. Case Nos. PRC12-5117
and PRC13-3223.

David A. Silverstone of David A. Silverstone, P.A., Fort Lauderdale, and
Daniel A. Bushell of Bushell Appellate Law, P.A., Fort Lauderdale, for
appellant.

Douglas F. Hoffman of Rudolf & Hoffman, P.A., Fort Lauderdale, for
appellees.

GROSS, J.

A childless decedent passed away one month after divorcing his wife
but before he changed his will—a will that left his entire estate to the
former wife and her relatives. The decedent's mother, for whom the will is
silent, sought to invalidate the will's residuary provision. Exercising
vigorous legal gymnastics, the circuit court permitted the placement of the
decedent's residuary assets into twin, newly-created irrevocable trusts for
the benefit of the former wife's niece and nephew. We reverse the order of
the circuit court because it was contrary to section 732.507(2), Florida
Statutes (2012).

*The Wills and Trusts*

Thomas Carroll was married to Wendy Israelson Carroll for eighteen years. In 2005, when things were good with the marriage, Thomas executed a will that provided for Wendy and for a trust that benefitted Wendy's niece and nephew, Lara and Jay Israelson, if Wendy predeceased Thomas. The bulk of Thomas's estate passed under Article 4 of the will:

> **ARTICLE 4. RESIDUARY ESTATE.** All the rest, residue and remainder of my estate, real and personal, of whatsoever kind and description and wheresoever the same may be situated, which I may own at the time of my death, I give, devise and bequeath to my wife, Wendy Israelson Carroll, if she survives me. If my wife predeceases me, then I give, devise and bequeath the same to the Trustees of the Wendy Family Trust created under The Wendy Israelson Carroll Revocable Trust Agreement dated June 21, 2002, as amended, subject to all duties, responsibilities, powers, instructions and limitations as provided therein, to be held in trust and/or paid over as therein provided.

Wendy created "The Wendy Israelson Carroll Revocable Trust Agreement" ("Revocable Trust"), referenced in Article 4 of the will, in June 2002. The Revocable Trust agreement designates Wendy as both grantor and trustee, with her brother, Stuart Israelson, as one of the alternate trustees should she die or become incapacitated. During her lifetime, Wendy, as grantor and trustee, retains the rights to (1) receive income from the trust, (2) withdraw from the principal as she sees fit, and (3) revoke or modify the trust, in whole or in part, at any time. Upon her death, the trust would become "absolute and irrevocable in all its particulars."

The "Wendy Family Trust" referenced in Thomas's will is a separate trust created by the Revocable Trust to receive property of the Revocable Trust after Wendy's death. The Wendy Family Trust would then be divided into two equal shares, one for the niece and the other for the nephew. Each would receive income and principal during their lifetimes at the trustee's discretion. Additional trusts would later be created upon each's death so the principal could be passed to succeeding generations.

### Wendy and Thomas's Divorce

In 2012, Wendy and Thomas divorced. They had no children and Thomas had no children from prior relationships. The final judgment of dissolution incorporated a detailed marital settlement agreement ("MSA"). In pertinent part, the MSA provided that Wendy would retain the marital home along with all financial accounts and assets in her name or in the name of "the Wendy Israelson Carroll Revocable Trust." Thomas was to

keep the financial accounts in his name and receive certain lump sum payments. In no uncertain terms, each party agreed to waive the right to share in the other's estate:

> [E]ach party waives, releases and relinquishes any and all rights of dower, curtesy, homestead, spousal statutory share or elective share, inheritance, family allowance or exempt property as well as any other right or claim of every kind, nature and description that they may now have or may hereafter acquire in the other party's real or personal property estate, by reason of the marital relationship, testamentary disposition or any disposition by trust during the party's lifetime and after the other party's death; and otherwise waives, releases and relinquishes all rights they may have or may hereafter acquire, whether known or unknown, as the other party's spouse under the present or future laws of any jurisdiction, including without limitation the rights to elect to take against any will, codicil or trust of the other party now or hereafter in force; to share in the other party's estate, except under a will, codicil or trust dated subsequent to the date of this Agreement; to act as personal representative of the other party's estate; and/or to act as trustee of any trust created by the other party.

With the divorce, Thomas's mother, appellant Helen Carroll (the "Mother"), became his sole intestate heir.

*Thomas's Death and Subsequent Litigation*

Thomas died on October 27, 2012, one month after the entry of the final judgment of dissolution. At the time of his death, he had not changed his 2005 will.

As successor personal representative under Thomas's 2005 will, Wendy's brother, Stuart, filed a petition for administration and later entered the will into probate. The Mother responded with a petition to determine beneficiaries, requesting that the trial court "enter an order determining that the devise to [Wendy's] revocable trust is void pursuant to the [MSA] and" Section 732.507(2), Florida Statutes (2012), so that "the residue of [the] decedent's estate should pass [to her] by intestacy." The Mother asserted that since Wendy is not actually dead, though the Will is to be construed that way, the funds paid to the Wendy Family Trust could "be readily accessed by [Wendy,] through a right to invade principal, or through revocation," rendering the trust assets "fully within her control." The Mother later moved for summary judgment, contending that the "'Wendy Family Trust,' as part of the [Revocable] Trust, was waived in the

- 3 -

MSA" and that "the Wendy Family Trust does not come into existence until Wendy's death." "Since Wendy is still alive," the Mother argued, "the 'Wendy Family Trust' does not exist."

In a written response, Stuart asserted the will's intent was that if Wendy should predecease Thomas, his residuary estate would pass to the Wendy Family Trust for the betterment of Wendy's niece and nephew, not Wendy. "The creation of the Wendy Family Trust for the benefit of the niece and nephew," Stuart argued, would "comport[] entirely and precisely with Thomas' intent under his will." To effectuate this intent, Stuart attached to his response an affidavit from Wendy, in which she confirmed that the revocable trust "is currently in full force and effect" and proposed that the Wendy Family Trust "provisions could be created" in a way that the trust "would be irrevocably created and unable to be modified."

The circuit court made two rulings at issue in this appeal. First, Wendy could not personally benefit from the estate, since she had waived such rights in the MSA and was deemed to have predeceased Thomas pursuant to section 732.507(2). Second, the court engaged in the legal fiction that Wendy had predeceased Thomas, allowing the manipulation of the Wendy Israelson Carroll Revocable Trust Agreement in a way that the Wendy Family Trust could be created for the sole benefit of Wendy's niece and nephew.

*Section 732.757(2) Voided Article 4 of Thomas's Will*

It is an understatement to say that animosities arise in divorce proceedings which are inconsistent with wills executed when everything was rosy in the marriage. Divorce attorneys typically advise clients to revise their estate plans for the post-divorce world. However, with all the stress of divorce litigation, it is not uncommon for people to resist the idea of their own mortality and procrastinate their post-divorce estate planning. And then they die with a will in place that provides for the former spouse.

Section 732.507(2), Florida Statutes (2012), protects divorced persons from their inattention to estate planning details. The statute provides:

> Any provision of a will executed by a married person that **affects the spouse of that person shall become void** upon the divorce of that person or upon the dissolution or annulment of the marriage. After the dissolution, divorce, or annulment, the will shall be administered and construed as if the former spouse had died at the time of the dissolution, divorce, or annulment of the marriage, unless the will or the dissolution or divorce judgment expressly provides otherwise.

(Emphasis added).

The statute is triggered by the entry of a final judgment of dissolution or annulment. It is broadly written to apply to a provision of a will that "affects" a former spouse. A common definition of "affect" is "to have an effect on." Webster's New World Collegiate Dictionary 23 (4th ed. 2002). A provision does not need to have a direct pecuniary benefit to "affect" a former spouse within the meaning of the statute. A provision that so "affects" a former spouse "become[s] void" "upon the dissolution." If a provision is "void," it is a nullity. *Cf. State v. Nelson*, 26 So. 3d 570, 577 (Fla. 2010) ("A nullity is defined as something that is legally void.").

Because Article 4 of Thomas's 2005 will left the residue of his estate to Wendy, she was affected by it. The bequest to the Wendy Family Trust was only to occur if Wendy predeceased Thomas. However, Wendy was very much alive on the date of dissolution and in complete control of the Revocable Trust that created the Wendy Family Trust for her niece and nephew to inherit. As the trustee of the Revocable Trust, Wendy had the authority to "merge any trust held hereunder with any other trusts [she] created" and to alter the terms of the "Wendy Family Trust." Thus, on the date of the dissolution, Wendy was very much "affected" by Article 4 of the will, so that provision was rendered void by section 732.507(2).

The appellees contend that the second sentence of section 732.507(2) allowed the circuit court to treat Wendy as if she died, so that her family's inheritance would proceed through her trust. This application of the statute would nullify the provision of the first sentence that, "upon divorce," renders "void" those will provisions that affect a former spouse. The circuit court used the fiction of Wendy's death to green light the rewriting of Wendy's trust documents after Thomas's death. However, section 732.507(2) becomes operative on the date of dissolution, so it does not allow for such post-death legal gymnastics to manipulate the issue of whether a will provision "affects" the former spouse.

Reversed and remanded for further proceedings consistent with this opinion.

CIKLIN, C.J., and STEVENSON, J., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***