NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| SILVIA GORDON,<br><br>　　　　　Appellant,<br><br>v.<br><br>ROBERT FISHMAN, as personal<br>representative of the Estate of Ron Priever,<br>deceased; ROBERT FISHMAN, as<br>Guardian of Bernard Priever; SAMUEL<br>GORDON; and REBECCA GORDON,<br><br>　　　　　Appellees. | Case No. 2D17-1488 |

Opinion filed August 24, 2018.

Appeal from the Circuit Court for
Hillsborough County; Richard A. Weis,
Judge.

Michael R. Kangas of BaumannKangas
Estate Law, Tampa, for Appellant.

Mary L. Wakeman of Hueler-Wakeman Law
Group, P.L., Tallahassee, for Appellee
Robert Fishman.

No appearance for remaining Appellees.


LaROSE, Chief Judge.

Silvia Gordon challenges the trial court's order determining beneficiaries

and order denying motion for rehearing and to vacate. We have jurisdiction. See Fla.

R. App. P. 9.170(b)(5). Because section 732.507(2), Florida Statutes (2015), does not apply to the facts of this case, we reverse and remand.

## I. Procedural and Factual Background

In December 2005, Ron Priever executed a will devising property to his then fiancée, Ms. Gordon. If Ms. Gordon did not survive Mr. Priever, the will devised the property to her two children. Some two years later, Mr. Priever and Ms. Gordon married. They divorced in July 2013. Mr. Priever died two years later. He left no children or spouse.

In April 2015, Robert Fishman, as guardian of Bernard Priever, the decedent's father, petitioned for administration, treating the decedent's estate as an intestate estate. Allegedly, the decedent told several of his family members that he destroyed or revoked his December 2005 will because of a premarital agreement and subsequent divorce from Ms. Gordon. The trial court granted the petition and appointed Mr. Fishman as personal representative of the estate. In August 2015, Ms. Gordon filed the decedent's original will with the trial court.

Mr. Fishman moved for entry of an order determining beneficiaries. He argued that, under section 732.507(2), the will was to be construed as if Ms. Gordon had predeceased the decedent. Ms. Gordon objected, arguing that section 732.507(2) did not apply because she was not married to the decedent when he executed the will.

The trial court found "that as a matter of law, [section 732.507(2)], provides that upon the dissolution of their marriage, the will is to be construed as if the former spouse, Silvia Gordon, had died and she is not entitled to any share of the estate." Accordingly, the trial court entered an order finding Ms. Gordon's two children

- 2 -

and Bernard Priever to be the estate's beneficiaries. Ms. Gordon filed an unsuccessful motion for rehearing. This timely appeal follows.

## II.    Analysis

Ms. Gordon argues that the trial court erred in applying section 732.507(2) because the statute's plain language makes it applicable only when the testator was married at the time he executed the will. Mr. Fishman counters that Ms. Gordon's position "belies the legislative intent of the statute . . . , as well as the case law construing it."[1]

We review questions of statutory interpretation de novo. Kumar v. Patel, 227 So. 3d 557, 558 (Fla. 2017). "The cardinal rule of statutory construction is that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute." Gaulden v. State, 195 So. 3d 1123, 1125 (Fla. 2016) (quoting City of Tampa v. Thatcher Glass Corp., 445 So. 2d 578, 579 (Fla.

---

[1]Mr. Fishman also urges us to affirm the trial court's order because the parties' premarital agreement and divorce decree allegedly forbid Ms. Gordon from inheriting from the decedent's estate. At oral argument, Mr. Fishman's counsel stated that both documents were in the court file, but counsel did not know if Mr. Fishman ever entered the documents into evidence in the probate proceedings. Nothing in our record indicates that Mr. Fishman ever preserved the issue by raising the argument below. See Moss v. Moss, 939 So. 2d 159, 166 (Fla. 2d DCA 2006) ("Because the Husband never argued to the trial court that he was entitled to an award of attorney's fees pursuant to any provision of the [prenuptial agreement], this issue was not preserved for appellate review and is not properly before this court on appeal.") Moreover, nothing in the record indicates that the trial court made any factual findings regarding these documents. Thus, we will not consider Mr. Fishman's argument for the first time on appeal. See Bueno v. Workman, 20 So. 3d 993, 998 (Fla. 4th DCA 2009) ("[A]n appellate court cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so."); see, e.g., Tank Tech, Inc. v. Valley Tank Testing, L.L.C., 244 So. 3d 383, 392 n.4 (Fla. 2d DCA 2018) (declining to employ tipsy coachman doctrine to affirm final judgment based on argued affidavit deficiencies where "the trial court did not have the opportunity to make a factual finding regarding that issue").

1984)).  Accordingly, we first examine the plain language of the statute.  Kumar, 227 So. 3d at 559; Gaulden, 195 So. 3d at 1125.  If the language is clear and unambiguous, we "will not look behind [its] plain language for legislative intent or resort to rules of statutory construction to ascertain intent."  Borden v. East-Eur. Ins. Co., 921 So. 2d 587, 595 (Fla. 2006) (quoting Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005)).  "Instead, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent."  Debaun v. State, 213 So. 3d 747, 751 (Fla. 2017) (quoting Paul v. State, 129 So. 3d 1058, 1064 (Fla. 2013)).  "If the legislature did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute."  Whitney Bank v. Grant, 223 So. 3d 476, 479 (Fla. 1st DCA 2017) (quoting Overstreet v. State, 629 So. 2d 125, 126 (Fla. 1993)).

> The statute before us provides as follows:
>
> Any provision of a will executed by a married person that affects the spouse of that person shall become void upon the divorce of that person or upon the dissolution or annulment of the marriage.  After the dissolution, divorce, or annulment, the will shall be administered and construed as if the former spouse had died at the time of the dissolution, divorce, or annulment of the marriage, unless the will or the dissolution or divorce judgment expressly provides otherwise.

§ 732.507(2) (emphasis added).  The legislature's use of the adjective "married" to modify "person" is a clear indication that it intended the "person" executing the will to be "married" at the time of execution.[2]  Thus, section 732.507(2) applies only when the marriage

---

[2]Notably, the legislature's use of the adjective "married" in section 732.507(2) differs from the statutes in other states—where the courts have determined the sequence of the execution of the will and the marriage was irrelevant—as the statutes in those states did not include the adjective "married" or any other language

- 4 -

predates the will. The decedent did not marry Ms. Gordon until about fifteen months after he executed his will. Section 732.507(2) does not apply here.

Mr. Fishman argues that this outcome is an unreasonable disregard of legislative intent. In his view, we should ignore the statute's plain and ordinary meaning. Mr. Fishman largely relies on Estate of Ganier v. Estate of Ganier, 418 So. 2d 256 (Fla. 1982), Carroll v. Israelson, 169 So. 3d 239 (Fla. 4th DCA 2015), and Conascenta v. Giordano, 143 So. 2d 682 (Fla. 3d DCA 1962). His reliance is misplaced.

A.      **Estate of Ganier**

Mr. Fishman argues that the decedent "clearly executed [his will] in contemplation of his marriage to [Ms.] Gordon." He contends that when a decedent makes a will in contemplation of marriage, a subsequent marriage does not entitle a surviving spouse to take an intestate share of decedent's estate as a pretermitted spouse under section 732.301.

However, the "in contemplation of marriage" requirement arose as a part of the common law concerning surviving pretermitted spouses. See Estate of Ganier, 418 So. 2d at 258 ("Florida courts early recognized the rule of law which developed to prevent the inadvertent disinheritance of a spouse whom the testator had married after executing a will."). Ms. Gordon was not a surviving spouse; she and the decedent

---

that required the testator to be married prior to the execution of the will. See, e.g., Davis v. Aringe, 731 S.W.2d 210, 211-12 (Ark. 1987); In re Estate of Reeves, 284 Cal. Rptr. 650, 654 (Cal. Ct. App. 1991); In re Estate of Forrest, 706 N.E.2d 1043, 1045-46 (Ill. App. Ct. 1999); In re Marriage of Duke, 549 N.E.2d 1096, 1099-1100 (Ind. Ct. App.), on reh'g, 552 N.E.2d 504 (Ind. Ct. App. 1990); Russell v. Johnston, 327 N.W.2d 226, 229 (Iowa 1982); In re Estate of Bloomer, 620 S.W.2d 365, 367 (Mo. 1981) ("The statute does not say 'all provisions of any will made subsequent to the marriage and in favor of the spouse so divorced are thereby revoked.' "); In re Will of Reilly, 493 A.2d 32, 33, 35 (N.J. Super. Ct. App. Div. 1985); In re Estate of Knospe, 626 N.Y.S.2d 701, 702-03 (Surr. Ct. 1995).

divorced prior to his death. See Cohen v. Shushan, 212 So. 3d 1113, 1123 (Fla. 2d DCA 2017) (holding that Ms. Shushan "could not be a surviving spouse of Mr. Cohen under section 732.102" because they were not married). Thus, the laws applicable to pretermitted spouses are inapposite. See Bauer v. Reese, 161 So. 2d 678, 680-81 (Fla. 1st DCA 1964) ("The purpose of [the statute permitting a pretermitted spouse to take as in intestacy] is clearly distinguishable from that of [the statute prohibiting a divorced spouse from taking under the other spouse's will], and these statutes are to be independently construed.").

Also noteworthy, section 732.507(2) does not include "in contemplation of marriage," or any similar language. We decline Mr. Fishman's invitation to add language to, or otherwise alter, section 732.507(2). If that is to be done, the legislature must do it. See Villanueva v. State, 200 So. 3d 47, 52 (Fla. 2016) (explaining that it is well-established "that we are not at liberty to add to a statute words that the Legislature itself has not used in drafting that statute" and "a matter that is not covered by a statute is to be treated as intentionally not covered" (citations omitted)).

**B.    Carroll**

Next, Mr. Fishman argues that "the entire purpose of [section 732.507(2)] is to protect divorced persons from their inattention to estate planning details." See Carroll, 169 So. 3d at 242-43; cf. Sveen v. Melin, 138 S. Ct. 1815, 1819 (2018) ("The underlying idea [for a provision revoking beneficiary designations to a former spouse upon divorce] was that the typical decedent would no more want his former spouse to benefit from his pension plan or life insurance than to inherit under his will. A wealth transfer was a wealth transfer—and a former spouse . . . was not likely to be its desired recipient. So a decedent's failure to change his beneficiary probably resulted from

'inattention,' not 'intention.' " (quoting Statement of the Joint Editorial Board for Uniform Probate Code, 17 Am. C. Tr. & Est. Couns. 184 (1991))).  Further, Mr. Fishman claims that "it is the parties' status on the date of the divorce that controls" because Carroll held that section 732.507(2) "is triggered by the entry of a final judgment of dissolution or annulment."  See Carroll, 169 So. 3d at 243.

In Carroll, the court observed:

> It is an understatement to say that animosities arise in divorce proceedings which are inconsistent with wills executed when everything was rosy in the marriage. Divorce attorneys typically advise clients to revise their estate plans for the post-divorce world.  However, with all the stress of divorce litigation, it is not uncommon for people to resist the idea of their own mortality and procrastinate their post-divorce estate planning.  And then they die with a will in place that provides for the former spouse.

Id. at 242-43 (emphasis added).  Our adherence to section 732.507(2)'s plain language does not lead to an unreasonable result contrary to legislature's intent.  Indeed, the decedent did not execute the will "when everything was rosy in the marriage."  He executed the will over a year before he married Ms. Gordon.

Further, Carroll was concerned with the trial court's use of "post-death legal gymnastics to manipulate the issue of whether a will provision 'affects' the former spouse."  169 So. 3d at 243.  The Carroll testator was married at the time he executed his will; unlike here, the sequence of the parties' status and the execution of the will was never at issue in Carroll.  Id. at 241.  We must conclude that Carroll's holding has no bearing on the application of section 732.507(2) in this case.

## C.    Conascenta

Now, we turn to Conascenta, 143 So. 2d 682.  At first blush, Conascenta appears to support Mr. Fishman's contention that the legislature intended that section

732.507(2) preclude any ex-spouse from claiming an inheritance under the will of their deceased ex-spouse, regardless of whether the two were married at the time the decedent executed the will.

In Conascenta, the testator executed a will devising property to Ms. Conascenta. 143 So. 2d at 683. The testator subsequently married and divorced her. Id. Unbeknownst to Ms. Conascenta, the testator was married to another woman the entire time. Id. After the testator died, Ms. Conascenta sought to enforce the will. Id. She argued that section 731.101, Florida Statutes[3] did not bar her from taking under the will because she was never the testator's legal spouse and, thus, the divorce had no effect. Conascenta, 143 So. 2d at 683. The Third District ruled that "a literal interpretation of [section 731.101] would lead to an unreasonable conclusion or purpose not designated by the legislature" and it was "the court's duty to interpret the statute in accord with the clear purpose and intent of the legislature." Conascenta, 143 So. 2d at 684.

Ms. Gordon attempts to distinguish Conascenta, claiming that the parties in that case had a common law marriage at the time of execution. Conascenta noted that the parties "were living and co-habiting together as husband and wife" at the time of

_____

[3]Section 731.101 was the previous version of section 732.507(2). Ch. 74-106, § 3, Laws of Fla. Section 731.101 stated:

> Will void as affecting surviving divorced spouse. All wills offered for and admitted to probate subsequent to June 11, 1951, made by husband or wife who have been divorced from each other subsequent to the date of said will, shall be made null and void by means of said divorce insofar as said will affects the surviving divorced spouse.

Conascenta, 143 So. 2d at 682 n.1.

will execution.  Id. at 683.  But the opinion offers no elaboration on the common law marriage issue.

Still, we are wary of Conascenta's reasoning and cannot rely on it to rule for Mr. Fishman.  Ms. Conascenta's argument was based on the fact that her marriage, subsequent to the execution of the will, was null and void.  Id.  Conascenta held "that to permit [Ms. Conascenta] to recover on the ground that she was not the legal spouse of the deceased would be contrary to the purpose and intent of the legislature in enacting [section] 731.101."  Conascenta, 143 So. 2d at 684.

The court did not address whether section 731.101 required the testator to be a husband or wife at will execution, as section 732.507(2) now provides.  Seemingly, neither party believed the nature of the relationship at the time of execution was an issue.  The parties and courts focused on Ms. Conascenta's argument that she was never legally married to the testator.

We hew to the statute's language.  Reading the statute as urged by Mr. Fishman would extend the reach of section 732.507(2) beyond its express language. We would have to ignore the term "married" and interpret section 732.507(2) to revoke provisions of a will "executed by a person" or provisions "executed by a person before or after marriage."  "To construe the statute in a way that would extend or modify its express terms would be an inappropriate abrogation of legislative power."  State v. Burris, 875 So. 2d 408, 413-14 (Fla. 2004) (citing Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984)); see also Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So. 2d 320, 324 (Fla. 2001) ("Under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done

so.  A court's function is to interpret statutes as they are written and give effect to each word in the statute." (footnote omitted)).

### III.  Conclusion

The plain and unambiguous language of section 732.507(2) revokes provisions of a will executed by a "married person."  We have no occasion to search for an intent other than that expressed in the clear, unambiguous language of the statute, especially where the decedent executed the will over a year before the marriage.  Cf. Carroll, 169 So. 3d at 242-43 (discussing the purpose of section 732.507(2) and noting that "animosities arise in divorce proceedings which are inconsistent with wills executed when everything was rosy in the marriage").  Section 732.507(2) does not apply in this case.  We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.


LUCAS and ROTHSTEIN-YOUAKIM, JJ., Concur.