NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| LEE COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D17-4595 |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| SAFETY NATIONAL CASUALTY CORPORATION, | ) ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2D17-4899 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Appellee. | ) | **CONSOLIDATED** |
| | ) | |

Opinion filed May 24, 2019.

Appeal from the Circuit Court for Lee County; Alane C. Laboda, Judge.

Andrew S. Bolin of Beytin, McLaughlin, McLaughlin, O'Hara, Bocchino & Bolin, Tampa, for Appellant Lee County School Board.

Jeremy W. Rogers of Freeman Mathis &
Gary, LLP, Tampa, for Appellant Safety
National Casualty Corporation.

David B. Kampf and Sarah M. Sorgie of
Ramey & Kampf, P.A. Tampa, for
Appellee State Farm Mutual Automobile
Insurance Company.

SLEET, Judge.

The trial court entered final summary judgment in favor of State Farm Mutual Automobile Insurance Company in State Farm's action against the Lee County School Board (the School Board) and Safety National Casualty Corporation. In that action State Farm sought reimbursement from both the School Board and Safety National for personal injury protection (PIP) benefits that it had paid to two of its insureds who were injured while passengers on a school bus owned by the School Board. Both the School Board and Safety National appeal, with the School Board arguing that State Farm's claims against it are barred by the doctrine of sovereign immunity and Safety National arguing that it is not an insurer for purposes of the reimbursement statute, section 627.7405(1), Florida Statutes (2015), and that its policy exclusions exempt it from the dictates of the statute. We, however, conclude that State Farm has a right of reimbursement against the School Board which is not barred by sovereign immunity, that Safety National is the School Board's insurer as contemplated by the statute, and that Safety National is subject to the statutory provision. Accordingly, we affirm the trial court's order finding that the School Board and Safety National are jointly and severally liable for reimbursement of the PIP benefits paid by State Farm.

The facts of this case are undisputed. On August 24, 2014, two insureds of State Farm were injured as passengers on a school bus owned and operated by the School Board

for public school transportation. As a result of the accident, State Farm paid no-fault benefits in the amount of $10,000 for each injured party. State Farm demanded reimbursement of the paid benefits from both the School Board and its insurer, Safety National. Both the School Board and Safety National rejected State Farm's demand, and State Farm filed the underlying action for reimbursement.

State Farm moved for summary judgment, arguing that because it was undisputed that the School Board owned the bus and that Safety National insured the bus, it was entitled to reimbursement as a matter of law pursuant to section 627.7405(1). The School Board also moved for summary judgment, arguing that State Farm's claim was barred by sovereign immunity, which it raised as an affirmative defense, and that the Florida Motor Vehicle No-Fault Law, see §§ 627.730-.7405, does not contain an express waiver of sovereign immunity. Safety National filed a memorandum of law in opposition to State Farm's motion for summary judgment, arguing that it was not an "insurer" under the reimbursement statute and that its insurance policy with the School Board excludes school bus occupants from coverage. Following a hearing, the trial court concluded that sovereign immunity was not a bar to State Farm's entitlement to reimbursement from the School Board and that Safety National was the School Board's insurer as contemplated by section 627.7405(1). The trial court therefore entered final summary judgment in favor of State Farm.

## I. SOVEREIGN IMMUNITY

On appeal, the School Board argues that the trial court erred in concluding that State Farm's action is not barred because school boards are government agencies entitled to the benefit of sovereign immunity and because the Florida Legislature has not enacted a

general law that clearly and unequivocally waives sovereign immunity in this instance.  We disagree.

Section 627.7405(1) provides as follows:

> Notwithstanding ss. 627.730-627.7405, an insurer providing personal injury protection benefits on a private passenger motor vehicle shall have, to the extent of any personal injury protection benefits paid to any person as a benefit arising out of such private passenger motor vehicle insurance, a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle, if the benefits paid result from such person having been an occupant of the commercial motor vehicle or having been struck by the commercial motor vehicle while not an occupant of any self-propelled vehicle.

Section 627.732(3)(b) defines "commercial motor vehicle" as "any motor vehicle which is not a private passenger motor vehicle" and further states that the term "does not include a mobile home or any motor vehicle which is used in mass transit, other than public school transportation, . . . and which is owned by a municipality, a transit authority, or a political subdivision of the state."  As such, the Florida Motor Vehicle No-Fault Law specifically includes public school buses in the definition of "commercial motor vehicle" and thereby subjects owners of public school buses to the reimbursement provision of section 627.7405(1).

The School Board is correct that "[t]he doctrine of sovereign immunity . . . provides that a sovereign cannot be sued without its own permission."  Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005).  "However, the Florida Constitution provides that the [l]egislature can abrogate the state's sovereign immunity."  Id.; see also art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.").  "Only the [l]egislature has authority to enact a general law that waives the state's sovereign immunity.  Further, any waiver of sovereign immunity must be clear and unequivocal."  Am. Home

<u>Assurance</u>, 908 So. 2d 471-72 (citation omitted).  And legislative waivers of sovereign immunity must be strictly construed.  <u>Id.</u> at 472 ("[W]aiver will not be found as a product of inference or implication.").

Here, the School Board maintains that there is no clear and unequivocal waiver of sovereign immunity in section 627.7405(1) or any of the related no-fault provisions of chapter 627, and it points to section 768.28, Florida Statutes (2015), as an example of such a waiver.  That section provides that "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." § 768.28(1).  The School Board argues that this language in section 768.28(1) indicates that the legislature knows how to clearly and unequivocally waive sovereign immunity when it intends to do so and that because it did not use the specific language "the state . . . waives sovereign immunity" in chapter 627, the legislature did not intend to waive sovereign immunity with regard to the state's liability for reimbursement of PIP payments pursuant to section 627.7405(1).

But although chapter 627 does not include the phrase "the state . . . waives sovereign immunity," we cannot ignore the fact that the legislature specifically excluded motor vehicles used for public school transportation from its definition of what is <u>not</u> a commercial motor vehicle.  <u>See</u> <u>United Auto Ins. Co. v. Rodriguez</u>, 808 So. 2d 82, 85 (Fla. 2001) ("Where the wording of [a statute] is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the [l]egislature as expressed in the plain language of the [statute].").  Prior to 1997, the definition of "commercial motor vehicle" included in section 627.732 was "any motor vehicle which is not a private passenger motor vehicle," but the statute included the caveat that "[t]he term 'motor vehicle' does not include . . . any motor

vehicle which is used in mass transit or public school transportation." § 627.732(1)(b), Fla. Stat. (1995). Thus, under that earlier version of the statute, owners of public school buses would not have been subject to the reimbursement provision of section 627.7405(1).

However, in 1997, the legislature amended the definition of "commercial motor vehicle" in section 627.732 to its current definition, which specifically includes motor vehicles used for public school transportation. See ch. 97-84, § 1, Laws of Fla. We cannot disregard this change in the statute. See Bailey v. St. Louis, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) ("When the [l]egislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear." (quoting Mangold v. Rainforest Golf Sports Ctr., 675 So. 2d 639, 642 (Fla. 1st DCA 1996))).

By expressly including vehicles used for public school transportation in the definition of "commercial motor vehicle," while expressly excluding other vehicles "used in mass transit" and "owned by a municipality, a transit authority, or a political subdivision of the state," see § 627.732(3)(b), Fla. Stat. (2015), the legislature has clearly and unequivocally waived sovereign immunity for actions brought under section 627.7405(1) for reimbursement of PIP benefits paid to individuals injured on vehicles used for public school transportation, which necessarily include public school buses. By expressly including vehicles owned by an entity that ordinarily enjoys the protection of sovereign immunity—specifically, a school board—in the definition of vehicles subject to a statutory cause of action for reimbursement, the legislature has clearly and unequivocally waived sovereign immunity as to that cause of action. Furthermore, if it was not the intent of the legislature to waive the School Board's sovereign immunity as to section 627.7405(1), the expressed exclusion of other government-

owned vehicles from the definition of "commercial motor vehicle" would be unnecessary. See Gordon v. Fishman, 253 So. 3d 1218, 1220 (Fla. 2d DCA 2018) ("The cardinal rule of statutory construction is that a statute should be construed so as to ascertain and give effect to the intention of the [l]egislature as expressed in the statute." (quoting Gaulden v. State, 195 So. 3d 1123, 1125 (Fla. 2016))). Accordingly, we conclude that the legislature expressly waived sovereign immunity for owners of vehicles used for public school transportation in actions brought pursuant to section 627.7405(1). To conclude otherwise would require this court to impermissibly rewrite the statute to create an exclusion for school boards that does not exist. See Paylan v. Dep't of Health, 226 So. 3d 296, 300 (Fla. 2017) ("We are not at liberty to add words to statutes that were not placed there by the [l]egislature." (alteration in original) (quoting Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999))).

## II. NO-FAULT INSURANCE EXEMPTION

The School Board also argues on appeal that it should be exempt from reimbursement under section 627.7405(1) because the legislature expressly exempted motor vehicles used as school buses from the statutory requirement to maintain no-fault insurance coverage. See § 627.733(1)(a) (requiring "[e]very owner or registrant of a motor vehicle, other than a motor vehicle used as a school bus . . . or limousine" to maintain insurance that provides the benefits and exemptions of the Florida Motor Vehicle No-Fault Law). We disagree. The express exemption of school buses from the requirement to maintain no-fault insurance does not conflict with the express inclusion of school buses in the definition of a "commercial motor vehicle," the owner of which is subject to the reimbursement provision of section 627.7405(1). The plain language of section 627.7405(1) expressly provides that the right of reimbursement against the owner of a commercial motor vehicle exists

- 7 -

"[n]otwithstanding ss. 627.730-627.7405," and we need look no further than the plain language of the statute. See Patrick v. Hess, 212 So. 3d 1039, 1041 (Fla. 2017) (" 'When the statute is clear and unambiguous,' we look no further than the statute's plain language to determine the [l]egislature's intent and . . . avoid rules of statutory construction." (quoting Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005))). As such, section 627.733(1)(a) cannot act as a limitation on section 627.7405(1).

### III. POLICY EXCLUSIONS

Safety National also relies on the fact that the School Board is not required to maintain no-fault insurance on its school buses to argue that it cannot be deemed an "insurer" under section 627.7405(1). Safety National points out that by the terms of its policy with the School Board, it only provides coverage for vehicles owned by the School Board which are required to carry no-fault insurance. It argues that because school buses are exempt from the requirements of section 627.733(1)(a), under the exclusions of its policy, it does not provide no-fault PIP insurance for the School Board's school buses and therefore cannot be considered to be "the insurer of the owner of a commercial motor vehicle" referenced in section 627.7405(1). Safety National maintains that the term as used in the statute can only mean an insurer that provides no-fault PIP benefits for the commercial motor vehicle involved in the accident. We reject this argument.

Section 627.7405(1) clearly and unambiguously provides a right of reimbursement against "the insurer of the owner of a commercial vehicle," without any qualification of that term. If the legislature intended for such an exception to the right of reimbursement to apply when an insurer does not provide no-fault PIP benefits, it could have provided for such in the statutory language, but we cannot read one into the statute where one

- 8 -

does not exist.  See Paylan, 226 So. 3d at 300.  Although the statute does not define the term "insurer," "[w]here . . . the legislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning."  Sch. Bd. of Palm Beach Cty. v Survivors Charter Sch., Inc., 3 So. 3d 1220, 1233 (Fla. 2009) (second alteration in original) (quoting Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 686 So. 2d 1349, 1354 (Fla. 1997)).  It is " 'appropriate to refer to dictionary definitions when construing statutes' in order to ascertain the plain and ordinary meaning of words used there."  Id. (quoting Barco v. Sch. Bd. of Pinellas Cty., 975 So. 2d 1116, 1122 (Fla. 2008)).  To that end, Black's Law Dictionary defines "insurer" as "[s]omeone who agrees, by contract, to assume the risk of another's loss and to compensate for that loss."  Insurer, Black's Law Dictionary (10th ed. 2014).  Safety National meets that definition.

By its own admission, Safety National provides insurance coverage for the school bus at issue.  In response to the allegation in State Farm's complaint that "the vehicle at issue . . . was covered under a policy of insurance with Safety National Casualty Corporation," Safety National admitted in its answer that "the school bus at issue was insured under a policy of insurance to the School District of Lee County" at the time of the instant accident.  That policy provides that Safety National "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "  The "schedule of coverages" and "covered autos" sections of the policy provide that liability coverage applies to "any auto," which includes school buses.  Accordingly, the School Board's policy with Safety National provides coverage to the School Board for bodily injury damages

incurred as the result of an accident involving a covered vehicle. That makes Safety National the School Board's insurer and subject to the reimbursement provision of section 627.7405(1).

Safety National also attempts to avoid reimbursement liability by pointing out that the injured parties are not "insureds" under Safety National's policy with the School Board and that in fact they are specifically excluded under the terms of that policy. While that may be true, it is of no consequence. Safety National is not liable to reimburse State Farm pursuant to the specific terms of its policy with the School Board. Rather, it is liable for reimbursement pursuant to the plain language of section 627.7405(1), and nothing in its policy with the School Board trumps the statutory requirement.

### IV. CONCLUSION

We affirm the trial court's order granting final summary judgment in favor of State Farm. State Farm paid PIP benefits to two of its own insureds who were injured while passengers on a school bus owned by the School Board, and pursuant to section 627.7405(1), it has a statutory right to reimbursement from the School Board as the owner of that commercial motor vehicle and from Safety National as the School Board's insurer.[1]

Affirmed.

CASANUEVA and SILBERMAN, JJ., Concur.

---

[1]We note that our holding here is in line with the public policy behind the right of reimbursement statute, which is to "reallocate[] some of the risk from the insurers of private vehicles to the [owners and] insurers of commercial vehicles" and to reduce or maintain current insurance premium rates for the owners of private vehicles. See Amerisure Ins. Co. v. State Farm Mut. Auto. Ins. Co., 897 So. 2d 1287, 1289 (Fla. 2005).